**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Carless JONES and Eugene Harvey,
Defendants-Appellants.**

Nos. 82–1670, 82–1678.

United States Court of Appeals,
Tenth Circuit.

May 20, 1983.

Michael G. Katz, Federal Public Defender, and Vicki Mandell-King, Asst. Federal Public Defender, Denver, Colo., for defendants-appellants.

Robert N. Miller, U.S. Atty., and William G. Pharo, Asst. U.S. Atty., Denver, Colo., for plaintiff-appellee.

Before SETH, Chief Judge, and LOGAN and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

On December 31, 1981, three armed men robbed a Denver area savings and loan branch. Lisa Dalke, a teller, and Marilyn Gates, the branch manager, were bound and forced to lie on the floor. The robbers removed money orders, traveler's checks, and $2,024 in cash, triggering a bank surveillance camera. The robbers were seen leaving the bank and walking toward an automobile by a bank customer, Christine Christensen, who had just driven up to the front of the bank. Because the men appeared suspicious, Christensen wrote down the license number of their car. One of the robbers ordered Christensen into the bank, and the men left.

On January 4, 1982, members of the Denver Police Department responded to a family disturbance call at or near 3434 High Street in Denver. While there, the officers saw a car bearing the license number observed by Christensen at the robbery. Denver Police Officer Andrade saw a man carrying a brown satchel emerge from the back of number 3434. Andrade ordered him to halt, and the man ran. The officers found the man, later identified by Andrade as defendant Jones, hiding in the rear of another building. He no longer had the brown satchel. When questioned about the satchel, Jones replied, "I don't know what you are talking about." Rec., vol. II, at 27.

The police arrested Jones and took him into the residence from which he had fled. He was questioned several times about the location of the brown satchel. Finally, Jones directed a woman who was present, "Show 'em where I put it," pointing towards a closet. Id. at 29. The officers searched the closet, but found nothing. Shortly thereafter, however, other police officers found a satchel lying outside the building where Jones had been found hiding, near the spot where he was apprehended. Officer Andrade identified the satchel as the one Jones had been carrying, and opened it. Inside was a handgun, traffic tickets written out in Jones' name, and a small knapsack. The officers asked Jones if the satchel was his, and he again denied owning it.

Appellants Harvey and Jones were jointly indicted and charged with armed robbery of a savings and loan in violation of 18 U.S.C. § 2113(a), (d) (1976). Both defendants filed motions for severance. Jones also filed a motion to suppress the fruits of the search of the satchel. After a lengthy pretrial hearing, these and other motions were denied. Jones and Harvey were tried and found guilty. Both filed motions for a new trial, alleging that adverse prior contact between the jury forewoman and Jones had denied them a fair trial. The trial court denied the motions.

On appeal, Harvey argues that the trial court erred in denying his motion to sever. Jones argues that the warrantless search of the satchel violated his Fourth Amendment

rights. Both defendants argue that their Sixth Amendment rights to a fair trial were violated by juror misconduct. For the reasons discussed below, we affirm defendants' convictions.

## I.

## SEVERANCE

Harvey argues that the trial court erred in failing to grant him a severance because more evidence was offered against Jones than against him. Harvey asserts that he was prejudiced by standing trial with Jones because (1) stronger eyewitness testimony identified Jones; (2) a considerable portion of the trial concerned the circumstances of Jones' arrest and the contents of the satchel; and (3) no evidence either of Harvey's arrest or of his presence at Jones' arrest was offered.

This circuit has recently discussed at length the standards to which a trial court must adhere when considering a defendant's motion for severance.

"It is axiomatic that defendants may be charged jointly in the same indictment where they are alleged to have participated in the same act or series of transactions. Rule 8(b), Fed.Rules Crim.Proc., 18 U.S.C. Defendants charged jointly in such indictments 'are not entitled to separate trials as a matter of right.' *Bailey v. United States,* 410 F.2d 1209 (10th Cir. 1969) *cert. denied sub nom., Freeman v. United States,* 396 U.S. 933, 90 S.Ct. 276, 24 L.Ed.2d 232 (1969). If prejudice either to the Government or a particular defendant is shown by the joinder, the court may, in its discretion, 'grant a severance of defendants or provide whatever other relief justice requires.' Rule 14, Fed. Rules Crim.Proc., 18 U.S.C. ... [T]he trial court must weigh the prejudice to a particular defendant caused by joinder against the obviously important considerations of economy and expedition in judicial administration. *United States v. Walton,* 552 F.2d 1354 (10th Cir.1977), *cert. denied,* 431 U.S. 959, 97 S.Ct. 2685, 53 L.Ed.2d 277 (1977).... [T]he defendant must bear a heavy burden of showing

real prejudice to his case. *United States v. Parnell* [581 F.2d 1374 (10th Cir.1978) ], *supra; United States v. Ready,* 574 F.2d 1009 (10th Cir.1978). A decision to deny separate trials under Rule 14 will not be disturbed on appeal in the absence of an abuse of discretion. *United States v. Eaton,* 485 F.2d 102 (10th Cir.1973).... 'To establish abuse of discretion more is required than that separate trials might have offered a better chance for acquittal of one or more of the accused.' *United States v. Knowles,* 572 F.2d 267 (10th Cir.1978). Rather, it must be shown that the joinder ... causes actual or threatened deprivation to an individual's right to fair trial. *United States v. Butler,* [494 F.2d 1246 (10th Cir.1974) ], *supra.* Of course, a trial court has a continuing duty to insure that prejudice does not occur, and if it does, to sever defendants or offenses. *Schaffer v. United States,* 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960)."

*United States v. Peterson,* 611 F.2d 1313, 1331 (10th Cir.1979), *cert. denied,* 447 U.S. 905, 100 S.Ct. 2986, 64 L.Ed.2d 854 (1980).

In the case before us, Jones was identified in court as one of the robbers by Lisa Dalke. Harvey, on the other hand, was identified in court as one of the robbers both by Dalke and by Marilyn Gates. Christine Christensen identified Harvey in court as the man by the car who ordered her to go into the bank. Both Dalke and Gates also made a photograph identification of Harvey from photographs taken by the bank surveillance camera.

The Government offered circumstantial evidence concerning the satchel and its contents, and the vehicle seen outside the savings and loan. This evidence tended to tie Jones to those items and to the robbery. We see no particular danger that this evidence was so complex or confusing that it might have prejudiced the jury against Harvey. Indeed, at trial Harvey's attorney stated: "Inasmuch as they [the Government's offers as exhibits of the satchel, its contents, and other circumstantial evidence] have no bearing on Mr. Harvey, I have no objections." Rec., vol. III, at 199.

We have reviewed the record and are well satisfied that the quality of testimony offered against Jones and Harvey respectively reveals no "gross disparity" entitling Harvey to severance, *see United States v. Sampol,* 636 F.2d 621, 646–48 (D.C. Cir.1980). Nor, based on the record, does there appear any likelihood that the jurors might have had difficulty in segregating the evidence because of confusion, *see id.* at 643–45. Rather, we have "every reason to believe that the jury was able to separate the evidence relevant to each defendant and . . . render a fair and impartial verdict as to each." *United States v. Walton,* 552 F.2d 1354, 1362 (10th Cir.), *cert. denied,* 431 U.S. 959, 97 S.Ct. 2685, 53 L.Ed.2d 277 (1977).

## II.

### ABANDONMENT

Jones argues that the warrantless search of the satchel violated his Fourth Amendment rights. The trial court held that the search was permissible on two grounds: that Jones had abandoned the satchel and therefore had no legitimate expectation of privacy in it entitling him to Fourth Amendment protection; and that the search was permissible as incident to a lawful arrest. Because of our resolution of the first ground, we need not address the court's alternative holding that the search was incident to Jones' arrest, and we offer no opinion as to the correctness of that holding.

In *Abel v. United States,* 362 U.S. 217, 241, 80 S.Ct. 683, 698, 4 L.Ed.2d 668 (1960), the Supreme Court declared that the Government's warrantless seizure of abandoned property did not violate the Fourth Amendment. *Id.* at 241, 80 S.Ct. at 698. Since *Abel,* the circuit courts have examined the issue, and the following guidelines to the "abandoned property" exception to the Fourth Amendment's warrant requirement have emerged. When individuals voluntarily abandon property, they forfeit any expectation of privacy in it that they might have had. *United States v. Berd,* 634 F.2d

979, 987 (5th Cir.1981). Therefore, a warrantless search or seizure of abandoned property is not unreasonable under the Fourth Amendment. *E.g., United States v. Diggs,* 649 F.2d 731, 735 (9th Cir.), *cert. denied,* 454 U.S. 970, 102 S.Ct. 516, 70 L.Ed.2d 387 (1981); *Berd,* 634 F.2d at 987; *United States v. D'Avanzo,* 443 F.2d 1224, 1225–26 (2d Cir.), *cert. denied,* 404 U.S. 850, 92 S.Ct. 86, 30 L.Ed.2d 89 (1971). The existence of police pursuit or investigation at the time of abandonment does not of itself render the abandonment involuntary. *United States v. Colbert,* 474 F.2d 174, 176 (5th Cir.1973); *see generally, e.g., Berd,* 634 F.2d at 987; *United States v. Canady,* 615 F.2d 694 (5th Cir.), *cert. denied,* 449 U.S. 862, 101 S.Ct. 165, 66 L.Ed.2d 78 (1980); *United States v. Williams,* 569 F.2d 823 (5th Cir. 1978); *D'Avanzo,* 443 F.2d 1224.

The test for abandonment is whether an individual has retained any reasonable expectation of privacy in the object. *Diggs,* 649 F.2d at 735. This determination is to be made by objective standards. *United States v. Kendall,* 655 F.2d 199, 201 (9th Cir.1981), *cert. denied,* 455 U.S. 941, 102 S.Ct. 1434, 71 L.Ed.2d 652 (1982). An expectation of privacy is a question of intent, which "may be inferred from words spoken, acts done, and other objective facts." *Kendall,* 655 F.2d at 202 (quoting *Williams,* 569 F.2d at 826). "A finding of abandonment is reviewed under the clearly erroneous standard." *Diggs,* 649 F.2d at 735.

When Jones discarded the satchel, he may have hoped that the police would not find it and that he could later retrieve it. However, his ability to recover the satchel depended entirely upon fate and the absence of inquisitive (and acquisitive) passers-by. When questioned by the police, he repeatedly disavowed any knowledge of the satchel. His comment to the woman in the residence to "[s]how 'em where I put it" appears at most to have been a mere ruse to deceive the police as to the existence of a satchel, rather than "words which acknowledged ownership," Brief of Appellants, at 17. Here, the "words spoken" and, more significantly, the "acts done" objectively

manifested Jones' clear intent to relinquish his expectation of privacy and abandon the satchel. This is not a case like *United States v. Burnette,* 698 F.2d 1038 (9th Cir. 1983), where, after an initial disclaimer of ownership, the defendant's subsequent conduct "strongly indicated her intent to retain a 'reasonable expectation of privacy in the purse.'" *Id.* at 1048.

We hold that Jones voluntarily abandoned the satchel. Accordingly, the subsequent warrantless search by the police did not violate his Fourth Amendment rights.

## III.

### JUROR MISCONDUCT

Finally, both Harvey and Jones argue that they were denied their Sixth Amendment right to a fair trial because of prior contact between Jones and the jury forewoman, Cloteal Jernigan. Jones' recollection of Jernigan came only after trial, and thus the issue did not arise at voir dire.

The trial court held an extensive post-trial hearing concerning the matter. Jones testified that Jernigan knew him when he was approximately ten years old, and had sent the police to his house for allegedly breaking and entering into a recreation center where she worked. He testified that at a later time she had accused him of taking money from a recreation center, and that at yet another time had falsely accused him of being intoxicated on recreation center property. These occurrences allegedly spanned the years 1967–1971. At the hearing, Jernigan testified that she had not recognized Jones at trial. Although Jones' name seemed vaguely familiar to her after the trial was completed, she nonetheless could not place Jones. She was certain that she had never given Jones' name to the police. At the conclusion of the hearing, the trial court expressly found that "Mrs. Jernigan in fact did not recognize Mr. Jones." Rec., vol. V, at 70. The court concluded that there was no jury misconduct or prejudicial action.

A trial court has a great responsibility and wide discretion in dealing with a motion for a new trial based on allegations of juror misconduct. *United States v. Hendrix,* 549 F.2d 1225, 1227 (9th Cir.), *cert. denied,* 434 U.S. 818, 98 S.Ct. 58, 54 L.Ed.2d 74 (1977); *Woodring v. United States,* 376 F.2d 619, 623 (10th Cir.), *cert. denied,* 389 U.S. 885, 88 S.Ct. 153, 19 L.Ed.2d 182 (1967). The trial judge's response to such a motion must be guided by the content of the allegations, including the seriousness and likelihood of the alleged bias, and the credibility of the source. *See Hendrix,* 549 F.2d at 1227–28. The appropriate inquiry in this case is whether either actual bias existed or "'whether the circumstances . . . compel an imputation of inherent bias to the juror as a matter of law.'" *Williams v. United States,* 418 F.2d 372, 377 (10th Cir.1969) (quoting *Brown v. United States,* 356 F.2d 230, 233 (10th Cir.1966)). Something more than an unverified conjecture is necessary to justify the grant of a new trial where only potentially suspicious circumstances are shown. *United States v. Barber,* 668 F.2d 778, 787 (4th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 66, 74 L.Ed.2d 67 (1982). And even where juror bias is shown, not every incident requires a new trial. "'The test is whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial.'" *Hendrix,* 549 F.2d at 1229 (quoting *United States v. Klee,* 494 F.2d 394, 396 (9th Cir.), *cert. denied,* 419 U.S. 835, 95 S.Ct. 62, 42 L.Ed.2d 61 (1974)). The trial court's decision will be upheld unless it is an abuse of discretion. *Id.*

In this case, no actual bias was shown. Any incidents that might have occurred happened more than ten years before the trial, when Jones was between ten and fourteen years old and was but one of the "thousands of people" a month that went to the recreation centers where Jernigan worked. As in *Williams,* "there is little in the record from which the court can conclusively presume . . . inherent prejudice as a matter of law. Whether [the juror] had any preconceived [prejudice] against defendant is a matter of supposition." 418 F.2d at 377. As Jones' counsel

stated at the hearing, "On the face of the evidence . . . it's not a glaring example of jury prejudice." Rec., vol. V, at 67–68. We agree with counsel, and with the trial court's findings. We hold that the trial court did not abuse its discretion in refusing a new trial. *Woodring,* 376 F.2d at 623.

Affirmed.