**UNITED STATES of America**

v.

**Tyrone ANDERSON.**

**Crim. A. No. 90–00439.**

United States District Court,
E.D. Pennsylvania.

Dec. 27, 1990.

Joseph G. Poluka, Asst. U.S. Atty., Philadelphia, Pa., for plaintiff.

Joyce Webb–Eubanks, Defender Assoc. of Philadelphia, Philadelphia, Pa., for defendant.

## MEMORANDUM

VAN ANTWERPEN, District Judge.

Before the court is defendant Tyrone Anderson's Motion to Suppress Physical Evidence. Defendant has been charged pursuant to 18 U.S.C. § 922(g)(1) with possession of a firearm by a convicted felon. He claims the firearm he discarded while fleeing from police officers and the statements[1] he made to the police officers are inadmissible evidence because they were obtained as the result of an unlawful seizure. After considering the attorneys' briefs and testimony given at the December 7, 1990, hearing in Easton, Pennsylvania, the court denied defendant's motion reserving the right to file this memorandum.

## FACTS

At 2:30 o'clock in the morning of December 6, 1989, Philadelphia police officers Robert Dunn[2] and Carol Porter were on routine patrol in their marked patrol car when they noticed a group of four to five males, including the defendant, standing at the corner of 56th & Chester Avenue. Officers Dunn and Porter knew this neighborhood was one of high drug-related criminal activity and recognized two of the men as major drug traffickers. Officer Dunn drove the patrol car to the corner where the men were assembled. The officers intended to ask the group for some identification.

As Officers Dunn and Porter began to exit their vehicle, Officer Dunn asked the group to stay where they were. Before he could finish what he was saying, the defendant fled from the officers. Officer Porter pursued the defendant on foot one-and-one-half blocks, and Officer Dunn followed them in the patrol car. The officers observed defendant throw a silver object onto a low lying roof, stop running, and raise his hands as if to surrender. Officer Porter patted down defendant for weapons, and after she had finished, Officer Dunn handcuffed him. Officer Dunn, the taller of the two, went over to attempt to reach the object but was unable to do so. The officers then called a police wagon to help them recover the object from the roof. Upon Officer Dunn's inspection, the object turned out to be a loaded semi-automatic handgun with its handle wrapped in black tape. At this point, defendant was arrested. From the patdown to the identification of the gun, less than five minutes had elapsed.

## DISCUSSION

■■ Defendant contends the handgun is the fruit of an illegal chase and stop. While the government did not explicitly characterize the handgun as "abandoned," we believe the doctrine of abandonment to be the gist of the government's response. One who voluntarily abandons personal property in the Fourth Amendment sense abandons one's reasonable expectation of privacy in that property and cannot challenge the constitutionality of its subsequent search or seizure. *See Abel v. United States,* 362 U.S. 217, 241, 80 S.Ct. 683, 698, 4 L.Ed.2d 668 (1960); *United States v. Jones,* 707 F.2d 1169, 1172 (10th Cir.1983); *Cf. United States v. Martin,* 386 F.2d 213, 215 (3rd Cir.1967). The abandonment of

---

1. At the hearing, the motion to suppress was orally amended to include the statements.

2. Officer Dunn testified that he had been a police officer for six years.

one's privacy interest is primarily a question of intent and is determined objectively. *Jones,* 707 F.2d at 1172. The intent may be inferred from words spoken, acts done, and the relevant circumstances existing at the time of the alleged abandonment. *United States v. Colbert,* 474 F.2d 174, 176 (5th Cir.1973). "The existence of police pursuit or investigation at the time of abandonment does not of itself render the abandonment involuntary." *Jones,* 707 F.2d at 1172; *Colbert,* 474 F.2d at 176. In order for the pistol[3] defendant discarded to be suppressed, defendant must show he was forced to dispose of it by the unlawful conduct of the police officers. *See United States v. Beck,* 602 F.2d 726, 729 (5th Cir. 1979); *Commonwealth v. Hall,* 475 Pa. 482, 487, 380 A.2d 1238, 1241 (1977).

█ Both defendant and the government have argued the propriety of the police officers' pursuit and detention against the reasonable suspicion standard for an investigative stop derived from *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and its progeny. The holding of *Terry* permitted police "to stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (discussing *Terry* ). While the "reasonable suspicion" of a *Terry* stop "obviously" demands a lesser showing of suspicion than that for probable cause, *Sokolow,* 490 U.S. at 7, 109 S.Ct. at 1585, it cannot conceptually be "readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates,* 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983). Recognizing the difficulty of defining terms such as "reasonable suspicion," the Supreme Court has said:

> [T]he essence of all that has been written is that the totality of circumstances—the whole picture—must be taken into ac-

count. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity. . . .

> .    .    .    .    .

> The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers.

*United States v. Cortez,* 449 U.S. 411, 417–418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981).

In assessing whether police officers had reasonable suspicion to stop a suspect, "the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." *Gates,* 462 U.S. at 243–44 n. 13, 103 S.Ct. at 2335 n. 13. Mindful of these principles we turn to the totality of the circumstances, and the reasonable inferences to be drawn therefrom, confronting the police officers who stopped defendant.

While on routine patrol of a high crime neighborhood in the early hours of the morning, Officers Dunn and Porter saw four to five men grouped on a street corner, two of whom the officers recognized as known drug traffickers. The officers drove their marked patrol car to the corner where the men were standing with the intention of asking them for some identification. We do not find, and the attorneys do not argue, anything unlawful in this initial approach.

█ As the officers began to exit their patrol car telling the men to stay where they were, defendant broke from the group and fled. The officers pursued him. It is at this point that defendant alleges the

---

**3.** Although the motion to suppress was amended to include statements, the attorneys' arguments both in court and in their briefs were directed solely at the gun. Our analysis is also directed at the physical evidence. No *Miranda* issues were alleged in the motion, and we assume that the admissibility of the statements turns upon the same allegedly illegal seizure as the suppression of the firearm.

police acted illegally. We disagree. The chase took place in the early morning hours. 1 W. La Fave & J. Israel *Criminal Procedure* § 3.8 (1984) (time of day relevant). Defendant was in the company of men whom the officers recognized as major drug traffickers. *Id.* (suspect's relation to surrounding circumstances relevant). Defendant was present in a high crime neighborhood. While that fact alone cannot support a finding of reasonable suspicion, the character of the neighborhood as one of high crime may enter into the reasonable suspicion calculus of a law enforcement officer. *United States v. Ceballos*, 719 F.Supp. 119, 124 (E.D.N.Y.1989). Finally, defendant ran from the officers. Although insufficient alone, defendant's flight may factor into the officers' reasonable suspicion determination. *See, e.g., Ceballos*, 719 F.Supp. at 125. Taking into account "the whole picture" confronting the officers, we find the officers had the requisite reasonable suspicion by which to support their chase of the defendant.

Having found the officers' pursuit justifiable, we must conclude the recovery of the handgun discarded during flight was also lawful. When defendant threw the handgun onto the roof, he obviously did not want the police to find the pistol on his person. He may have hoped the police would not find it on the roof and that he could later retrieve it. However, defendant's ability to recover the gun would depend entirely upon chance. When defendant threw away the handgun, he relinquished his reasonable expectation of privacy in it and his standing to oppose its subsequent acquisition by the police.

Defendant's motion to suppress is denied.