**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 3 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JOHN CARL McHORSE,

    Defendant-Appellant.

No. 98-2123

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CR-97-400-LH)

---

Norman C. Bay, Assistant United States Attorney (John J. Kelly, United States Attorney, with him on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.

Michael C. Gross, San Antonio, Texas, for Defendant-Appellant.

---

Before **SEYMOUR**, Chief Judge, **BALDOCK**, and **BRISCOE**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

---

    Defendant John Carl McHorse is a forty-five year old resident of Taos Pueblo, New Mexico.  A jury convicted him on four counts of aggravated sexual abuse of a child less than twelve years of age, in violation of 18 U.S.C. § 2241(c), and one count of abusive sexual contact with a child less than twelve years of age, in violation of 18 U.S.C.

§ 2244(a)(1). The district court sentenced Defendant to 310 months imprisonment. Defendant appeals his convictions, raising nine points of trial error. Seven of Defendant's arguments relate to the district court's admission of uncharged acts of child molestation into evidence. Specifically, Defendant argues that this evidence (1) deprived him of his Fifth Amendment right to due process; (2) deprived him of his Fifth Amendment right to equal protection of the laws; (3) was inadmissible under Fed. R. Evid. 414(a) as too dissimilar from the charged offenses; (4) was inadmissible under Fed. R. Evid. 403 as unduly prejudicial; (5) was inadmissible under the Sixth Amendment's Confrontation Clause and Fed. R. Evid. 802 as hearsay; and (6) was inadmissible under Fed. R. Evid. 608(b) as improper impeachment. Defendant further argues that the district court's limiting instruction to the jury regarding the Rule 414(a) evidence was inadequate. Finally, Defendant argues that the district court erred in denying his motion for a mistrial based on juror misconduct, and his motion for a continuance presented the morning of trial. Our jurisdiction arises under 28 U.S.C. § 1291. We affirm.

I.

Defendant is the uncle of the victims named in the indictment. The indictment refers to the victims as Jane Doe A, Jane Doe B, and Jane Doe C. The victims' father is the brother of Defendant's common law wife. The indictment alleged that between 1992 and 1994, Defendant engaged in sexual acts with the three victims, all of whom were under twelve years of age at the time.

Jane Doe A, fourteen years of age at the time of trial, testified that she was eight years old when Defendant began sexually abusing her. The abuse occurred on weekends when she and her half-sister, Jane Doe B, visited their aunt and Defendant. Defendant played games like strip poker with the girls, showed them "porno" movies, and gave them alcoholic beverages to drink. The abuse continued through Jane Doe A's eleventh birthday. According to Jane Doe A, Defendant fondled her on numerous occasions, and eventually raped her with his wife's assistance.

Jane Doe B was thirteen years old at the time of trial. She corroborated Jane Doe A's testimony. Jane Doe B testified that she and her half-sister frequently visited her aunt and Defendant at their home in Taos Pueblo. She stated that Defendant began sexually abusing her when she was "seven or eight." Like Jane Doe A, Jane Doe B testified that Defendant fondled her on numerous occasions and told her "whatever goes on in this house stays in this house."

Jane Doe C, the youngest sister, was nine years old at the time of trial. She visited her aunt and Defendant less frequently than her sisters. She testified that she did not like going to Defendant's house because he touched her underneath her clothing and "did stuff to me." When asked where Defendant touched her, Jane Doe C circled the genital region of a human drawing. She stated she didn't tell anyone because "if I told anyone, he'd kill my mom and dad." She further stated that she did not like the taste of licorice because Defendant would give her licorice after he touched her.

3

In addition to the testimony of the three victims named in the indictment, the government introduced the testimony of two other alleged victims, Jane Doe D and Jane Doe E, pursuant to Fed. R. Evid. 414(a). A first cousin of Jane Does A, B, and C, and also a niece of Defendant, Jane Doe E was seven years old at the time of trial. She was four when Defendant allegedly abused her. When asked whether Defendant ever did "anything to you," she responded "yeah." She stated, however, that she could not remember what Defendant did to her. Jane Doe D, ten years old at the time of trial, testified that she lived next door to Defendant. Jane Doe D stated that when she was in the third or fourth grade, she was at Defendant's house playing with his son Angelo, and Defendant "made me touch his – his – the front" on the outside of his clothing. She also stated that Defendant "touched my butt" on the outside of her clothing.

As part of its case-in-chief, the government also introduced the testimony of six additional individuals. Three of those witnesses testified to facts relating to Jane Does A, B, and C. Alisha Jordan, Jane Doe B's older cousin, testified that during the period of abuse, Jane Doe B confided in her, but made her promise not to tell anyone. Psychotherapist Jorna Rory White, assistant clinical director of the Taos Child Sexual Abuse Program, began counseling Jane Does A, B, and C in the fall of 1997. During counseling, each victim related to White the sexual abuse that occurred at Defendant's home, to which White testified in detail. Pediatrician Renee Ornelas of the University of New Mexico physically examined Jane Does A and B in the spring of 1997. Doctor

4

Ornelas testified that neither girl showed signs of sexual abuse. She further testified, however, that because of young girls' propensity to heal quickly, her findings were not inconsistent with sexual abuse that occurred more than two years earlier.

Three other witnesses testified to facts relating to the uncharged, Rule 414(a) evidence against Defendant. Edith Martinez is the grandmother of Jane Doe D. Martinez testified that when her granddaughter was four years old, she came to her in a frightened and excited state from Defendant's home. Jane Doe D told her grandmother that Defendant had exposed himself to her and said "look, kiss it." Jane Doe D did not recall the incident. Doctor Dolores Endres, a family practitioner, testified that during a routine physical exam for the Head Start program in August 1994, Jane Doe E "reported that John touched her in her private parts." Doctor Endres referred the matter to social services. Doctor Dorothy Kethler, a psychotherapist, testified that she began counseling Jane Doe E in 1995. Over a year later, Jane Doe E described Defendant's sexual abuse to Kethler in detail.

Defendant's sole defense was fabrication. Defendant's twenty-three year old son, Justin McHorse, first testified on his father's behalf. On cross-examination, Justin stated that his father would never sexually abuse a child. Ruling that Justin had become a character witness for Defendant, the district court allowed the government to ask about additional instances of Defendant's alleged sexual misconduct. Specifically, the government asked Justin if he was aware that Defendant's daughter, Jennifer McHorse,

5

and Defendant's younger half-sister, Catherine Glerup, had accused Defendant of sexually abusing them.

After two long-time acquaintances of Defendant from Taos Pueblo, Ethel Lujan and Ruby Archuleta, testified for Defendant, he testified on his own behalf. Defendant categorically denied having sexually abused anyone. He stated that a long-standing feud with his wife's family was likely the reason for the allegations against him. When asked on cross-examination if he was good to his nieces, Defendant responded "I'm good to everyone." Over objection, the district court then allowed the government to ask a series of leading questions relating to Defendant's alleged sexual abuse of his younger half-sister. Defendant denied sexually abusing his half-sister.

At this point, the district court permitted the government to call Defendant's half-sister, Catherine Glerup. Glerup testified that when she was five or six and Defendant was a teenager, he began sexually molesting her at least once a week. She further testified that when she was around eighteen, Defendant had sexual intercourse with her. Following Glerup's testimony, both parties rested. The jury returned verdicts of guilty on all counts of the indictment.

## II.

Fed. R. Evid. 414(a) provides: "In a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for

6

its bearing on any matter to which it is relevant." According to its principal Senate and House sponsors, Rule 414(a)--

> supercede[s] in sex offense cases the restrictive aspects of Federal Rule of Evidence 404(b). In contrast to Rule 404(b)'s general prohibition of evidence of character or propensity, the new rules for sex offense cases authorize admission and consideration of evidence of an uncharged offense for its bearing "on any matter to which it is relevant." This includes the defendant's propensity to commit sexual assault or child molestation offenses, and assessment of the probability or improbability that the defendant has been falsely or mistakenly accused of such an offense.

140 Cong. Rec. S12990-02 at S12990 (daily ed. Sept. 30, 1994) (statement of Sen. Dole); 140 Cong Rec. H8968-01 at H8991 (daily ed. August 21, 1994) (statement of Cong. Molinari).

## A.

Defendant proffers five arguments why the district court erred in admitting evidence of his alleged sexual abuse of Jane Does D and E, pursuant to Fed. R. Evid. 414(a). First, Defendant argues that this evidence was so prejudicial that it deprived him of a fair trial in violation of the Fifth Amendment's due process clause. Whether Defendant challenges Rule 414(a) on its face or as applied is unclear. Any argument that the Rule is unconstitutional on its face, however is foreclosed absent en banc review by our recent decision in United States v. Castillo, 140 F.3d 874, 879-883 (10th Cir. 1999). In Castillo, we rejected a facial challenge to Rule 414(a), holding "that Rule 414 does not on its face violate the Due Process Clause." Id. at 880. Accordingly, we construe Defendant's argument as an "applied" challenge. Our review is de novo. Id. at 879.

7

> [W]hen reviewing a trial court's decision to admit Rule 414 evidence for constitutional error, the appellate court must engage in a case-specific inquiry only, asking whether the evidence in the case was so prejudicial in the context of the proceeding as a whole that the defendant was deprived of the fundamental fairness essential to the concept of due process.

Id. at 883 (internal brackets and quotations omitted).

Applying this standard, we conclude that the Rule 414(a) evidence relating to Defendant's sexual abuse of Jane Does D and E was not so prejudicial as to violate the due process protections of the Fifth Amendment. Rather, this evidence appears to us to be exactly the type of evidence Congress intended to allow when it enacted Rule 414(a). To be sure, propensity evidence is always suspect because of the risk that the jury will convict a defendant on the basis of uncharged behavior. See United States v. Enjady, 134 F.3d 1427, 1430 (10th Cir.), cert. denied, 119 S. Ct. 202 (1998) (rejecting due process challenge to propensity evidence of "sexual assault" under Fed. R. Evid. 413(a)). On more than one occasion, however, the district court ensured Defendant's due process rights by instructing the jury that evidence of uncharged acts of sexual abuse "were not sufficient to prove the defendant guilty of the crimes charged in the indictment" and Defendant was "not on trial for any act, conduct, or offense not charged in the indictment." At the same time, the court instructed the jury that "the government has the burden of proving that the defendant committed each of the elements of the offenses charged in the indictment." For Defendant to prevail on his due process argument, we would have to assume the jury ignored the court's instructions "that they consider only

8

the crime charged in deciding whether to convict." Castillo, 140 F.3d at 884 (emphasis in

original). Yet, "[a] central assumption of our jurisprudence is that juries follow the

instructions they receive." Id.

B.

Next Defendant argues that Fed. R. Evid. 414(a) violates the Fifth

Amendment's equal protection guarantees because federal sex crime prosecutions

are disproportionately targeted at Native Americans.[1] This argument is meritless. In

addition to rejecting the Native American defendant's due process challenge to Rule

414(a) in Castillo, we also rejected an equal protection challenge. Castillo, 140 F.3d at

883. Rule 414(a) applies to any defendant charged with child sexual abuse within the

jurisdiction of the federal courts. Where a law is neutral on its face, but has a

disproportionately adverse effect upon a racial minority, "it is unconstitutional under the

Equal Protection Clause only if that impact can be traced to a discriminatory purpose."

United States v. Easter, 981 F.2d 1549, 1559 (10th Cir. 1992) (internal quotations

omitted) (rejecting argument that cocaine base penalties violate equal protection due to

disproportionately adverse effect on African Americans). Defendant presents no

evidence that Congress enacted Rule 414(a) to further a racially discriminatory purpose.

Thus, Rule 414(a) is subject only to rational basis review, under which it easily passes

---

[1] While the Fifth Amendment contains no equal protection clause, the equal
protection standards of the Fourteenth Amendment are incorporated into the Fifth
Amendment's promise of due process. Castillo, 140 F.3d at 883.

9

constitutional muster. Castillo, 140 F.3d at 883. Congress' objective of enhancing effective prosecution of child sexual abuse is a rational basis for Rule 414(a). As we stated in Enjady: "The nature of sex offense prosecutions frequently involve victim-witnesses who are traumatized and unable to effectively testify, and offenders who often have committed many similar crimes before their arrest on the charged crime." 134 F.3d at 1434.

C.

Aside from his Due Process and Equal Protection arguments, Defendant argues that evidence of his alleged sexual abuse of Jane Does D and E was inadmissible under Fed. R. Evid. 414(a). In United States v. Guardia, 135 F.3d 1326 (10th Cir. 1998), we established a three-prong inquiry for determining the admissibility of sexual assault evidence under Fed. R. Evid. 413(a). Rule 413(a) is identical to Rule 414(a) except that the former applies to the "offense of sexual assault," while the later applies to the "offense of child molestation."[2] Congress enacted both Rules 413(a) and 414(a) as part of the Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-222, tit. XXXII, § 320935(a), 108 Stat. 1796, 2135-36 (1994).

Therefore, we reason from Guardia, and conclude that like Rule 413(a), evidence

---

[2] Fed. R. Evid. 413(a) reads: "In a criminal case in which the defendant is accused of an offense of sexual assault, evidence of the defendant's commission of another offense or offenses of sexual assault is admissible, and may be considered for its bearing on any matter to which it is relevant."

10

offered under Rule 414(a) must meet three requirements before the district court may exercise its discretion to admit it. First, the court must determine that the defendant "is accused of an offense of child molestation." Fed. R. Evid. 414(a). Second, the court must determine that the proffered evidence is "evidence of the defendant's commission of another offense or offenses of child molestation." Id. Third, the court must determine that the proffered evidence is relevant. Guardia, 135 F.3d at 1328, 1331. We review the district court's legal interpretation of the Federal Rules of Evidence de novo. Id. at 1328. Once we determine that the district court properly interpreted the rules, however, we review the court's decision to admit the evidence only for an abuse of discretion. Id.

In this case, Defendant undoubtedly was accused of the offense of child molestation. The evidence relating to Defendant's sexual abuse of Jane Does D and E was evidence that Defendant committed other offenses of child molestation. Thus, the admissibility of the evidence in question turns solely on its relevancy. The Rule 414(a) testimony of Jane Doe D, Edith Martinez, Dr. Dolores Endres, and Psychotherapist Dorothy Kethler, if believed, certainly indicates that Defendant has a propensity to sexually abuse young girls. See Guardia, 135 F.3d at 1329. While Jane Doe E testified that she could not remember what Defendant did to her, and thus her testimony has no bearing on Defendant's propensity, such testimony caused Defendant no discernible prejudice.

Moreover, Defendant's alleged conduct towards Jane Does D and E closely

11

resembles that conduct alleged against Jane Does A, B, and C. See id. Like Jane Does A, B, and C, Jane Doe E is Defendant's young niece. Defendant allegedly abused her in the same manner as he abused her cousins when she visited him and her aunt at their home. Similarly, Jane Doe D was Defendant's young neighbor. Defendant allegedly abused Jane Doe D in the same, albeit less frequent, manner as the other victims when she came to his home to play with his son. Therefore, the district court properly concluded that the testimony of these witnesses was probative of Defendant's guilt, and the evidence satisfied Rule 414(a)'s three requirements.

D.

Defendant next argues that the district court erred in admitting the Rule 414(a) evidence because its probative value was substantially outweighed by its prejudicial effect on the jury under Fed. R. Evid. 403's balancing requirement. In United States v. Meacham, 115 F.3d 1488, 1495 (10th Cir. 1997), we held that prior acts evidence under Rule 414(a) was subject to Rule 403, which allows the district court to exclude evidence if its probative value is "substantially outweighed by the danger of unfair prejudice." Nevertheless, we stated that "clearly under Rule 414 the courts are to 'liberally' admit evidence of prior uncharged sex offenses." Meacham, 115 F.3d at 1492.

In Enjady, 134 F.3d at 1433, we set forth a series of matters for the district court to consider in performing the Rule 403 balancing test:

> Rule 403 balancing in the sexual assault context requires the court to
> consider "1) how clearly the prior act has been proved; 2) how probative the

evidence is of the material fact it is admitted to prove; 3) how seriously disputed the material fact is; and 4) whether the government can avail itself of any less prejudicial evidence. When analyzing the probative dangers, a court considers: 1) how likely is it such evidence will contribute to an improperly-based jury verdict; 2) the extent to which such evidence will distract the jury from the central issues of the trial; and 3) how time consuming it will be to prove the prior conduct."

(quoting M. Sheft, Federal Rule of Evidence 413: A Dangerous New Frontier, 33 Am. Crim. L. Rev. 57, 59 n.16 (1995)). In Castillo, 140 F.3d at 884, we further instructed the district courts that "[b]ecause of the unique nature of character evidence, it is important . . . [to] make a reasoned, recorded statement of its 403 decision" when admitting Rule 414(a) evidence. (internal quotations omitted). Only then may we determine whether the district court properly exercised its discretion in admitting the Rule 414(a) evidence. See also United States v. Charley, ___ F.3d ___, ___ (10th Cir. 1999).

In this case, the district court properly required the government to proffer its Rule 414(a) evidence outside the presence of the jury. In addition to the evidence surrounding Jane Does D and E, the government proffered evidence relating to Defendant's sexual abuse of Catherine Glerup, his now forty-year old half-sister. In a thorough, well reasoned explanation on the record, the district court allowed the government to introduce Rule 414(a) evidence relating to Jane Does D and E, but disallowed the testimony as to Defendant's half-sister as too dissimilar and remote. The district court stated in part:

I believe that I will limit you to the testimony relating to the children – the two children, . . . [Jane Does D and E], under the 403 balancing. The Court has considered the factors set out in the Enjady case. If the witnesses testify as counsel has indicated, the prior act will have been proved . . . . It seems

13

to me that . . . how probative the evidence is of a material fact, it is admitted to prove that the two children are probably more probative of the circumstances arising out of this case or upon which this case is based than . . . is the half-sister. . . .

Given the instruction that I intend to give, . . . , I conclude that by restricting the evidence to two of the witnesses as opposed to all three, and together with . . . the extent to which such evidence will distract the jury from the central issues of the case, I believe it will be less likely to distract the jury with the children from the issues of the case than to deal with the half-sister situation.

Based upon our review of the record, we do not believe the district court abused its discretion under Fed. R. Evid. 403 in allowing the testimony relating to Defendant's sexual abuse of Jane Does D and E. See Enjady, 134 F.3d at 1433 ("[T]he exclusion of relevant evidence under Rule 403 should be used infrequently, reflecting Congress' legislative judgment that the evidence 'normally' should be admitted."). Rather, the court properly applied Enjady in reviewing the government's Rule 414(a) evidence and concluded, also properly, that the government had established Defendant's prior acts with evidence sufficient to support a finding by a preponderance that Defendant had in fact committed those acts. See id.

E.

Defendant's fifth and final argument against the Rule 414(a) evidence relates to the testimony of Jane Doe E, Drs. Endres, and Kethler. Defendant argues that these witnesses' testimony was inadmissible hearsay under Fed. R. Evid. 802, and thus violated his right to confront witnesses against him under U.S. Const. amend. VI. As part of its Rule 414(a) proffer, the government informed the district court that Jane Doe E would

14

testify that Defendant had sexually abused her. When Jane Doe E took the stand, however, she was unable to testify as to Defendant's prior acts. For obvious reasons, Defendant chose not to cross examine her. Nevertheless, Defendant now claims that because Jane Doe E, seven years old at the time of trial, testified that she could not remember what Defendant had done to her, he could not effectively cross-examine her. According to Defendant, the district court then compounded the error by allowing Drs. Endres and Kethler to testify over his objection about what Jane Doe E had told them regarding Defendant's sexually abusive conduct.

We review claims under the Confrontation Clause de novo. United States v. Tome, 3 F.3d 342, 351 (10th Cir. 1993), rev'd on other grounds, 513 U.S. 150 (1995). To be sure, "'simply putting a child on the stand, regardless of her mental maturity, is not sufficient to eliminate all Confrontation Clause concerns.'" Id. at 352 (quoting United States v. Spotted War Bonnett, 933 F.2d 1471, 1474 (8th Cir. 1991)). Neither we nor the Supreme Court, however, has ever held that a witness' loss of memory may be the basis for a Confrontation Clause violation. "A witness' lack of recollection does not constitute an inability to cross-examine." United States v. Knox, 124 F.3d 1360, 1364 (10th Cir. 1997). "Ordinarily, a witness is regarded as 'subject to cross-examination' when [s]he is placed on the stand, under oath, and responds willingly to questions." United States v. Owens, 484 U.S. 554, 561 (1988) (holding that admission of a witness' prior identification statement where the witness could not remember the basis for the

15

identification did not violate the Confrontation Clause or Fed. R. Evid. 802).  The

Confrontation Clause "guarantees only an <u>opportunity</u> for effective cross-examination,

not cross-examination that is effective in whatever way, and to whatever extent the

defense might wish." <u>Delaware v. Fensterer</u>, 474 U.S. 15, 20 (1985) (emphasis in

original).

In other words, the demands of the Confrontation Clause are satisfied where a

defendant has the opportunity to reveal weaknesses in the witness' testimony.  <u>Tome</u>, 3

F.3d at 352.  In this case, Defendant had the opportunity to use Jane Doe E's lack of

memory to attack her credibility as a witness.  But because Jane Doe's testimony was

minimally, if at all harmful to Defendant, he had little, if anything to attack.  <u>Cf.</u>

<u>Pennsylvania v. Ritchie</u>, 480 U.S. 39, 51 (1987) (Confrontation Clause ensures right of a

defendant to face those <u>who testify against him</u>).  Defendant chose not to cross-examine

Jane Doe E because cross-examination may have jogged her memory, resulting in

testimony damaging to Defendant.  Accordingly, we conclude that Jane Doe's failure to

recall the alleged incidents of sexual abuse against her coupled with Defendant's strategy

choice not to cross-examine her regarding her lack of memory did not violate Defendant's

rights under the Confrontation Clause.

Similarly, the testimony of Drs. Endres and Kethler did not violate the

Confrontation Clause or Fed. R. Evid. 802.  Rule 802 provides that hearsay is

inadmissible except as provided by law.  Although Jane Doe E's out-of-court statements

16

which these witnesses related to the jury undoubtedly constituted testimony against the Defendant, the admission of such statements did not violate the Confrontation Clause because Jane Doe E, the declarant, testified as a witness and Defendant had the opportunity to cross examine her. See California v. Green, 399 U.S. 149, 158 (1970).

More importantly in this case, Jane Doe E's out-of-court statements fell within the Rule 803(4) exception to the hearsay rule which applies to statements made for purposes of medical diagnosis or treatment.[3] Rule 803(4) is a "firmly rooted" exception to the hearsay rule which carries "sufficient indicia of reliability" to satisfy the aims of the Confrontation Clause. White v. Illinois, 502 U.S. 346, 355 n.8 (1992). Because a patient's medical care depends on the accuracy of information she provides to her doctors, the patient has a motive to be truthful. United States v. Pacheco, 154 F.3d 1236, 1240 (10th Cir. 1998), cert. denied, 119 S.Ct. 886 (1999). Thus, Jane Doe E's statements to Drs. Endres and Kethler are likely reliable, and the district court did not abuse its discretion in admitting her statements into evidence. See United States v. Norman T., 129 F.3d 1099, 1105-06 (10th Cir. 1997), cert. denied, 118 S. Ct. 1322 (1998) (rejecting argument that because trustworthiness guarantees underlying Rule 803(4) may be absent in the case of a child witness, Rule 803(4) cannot serve as a proper basis for physician

---

[3] Fed. R. Evid. 803(4) excludes from the hearsay rule "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

17

testimony).

III.

Turning from his Rule 414(a)-based arguments, Defendant next maintains that the district court improperly allowed the government to question Defendant and his twenty-three-year-old son Justin about alleged incidents involving Defendant's daughter and half-sister. At trial, both Defendant and Justin testified. Justin testified he knew his father "couldn't" do anything bad to anybody, "would not do anything like that," and "was a great father and provided a very good home." Defendant testified, "I get along well with all children. I respect and love children," "I never mistreat them," and "I'm good to everyone." Based on this testimony, the district court ruled Justin essentially had testified as a character witness for Defendant and Defendant had testified as a character witness for himself, opening the door to rebuttal by specific instances of conduct. The prosecutor then asked Justin if he was "aware of the fact that your own sister . . . has said that he sexually abused her from the time that she was a small child," and if he was "aware of the fact that [Defendant's half-sister] has said that your father sexually abused her from the time that she was a small child to the time she was 18?" Justin replied he was not aware of the daughter's allegations but was aware of the half-sister's allegations. The prosecutor asked Defendant if he had molested his half-sister when she was a child. Defendant denied the allegations.

We review the admission of evidence at trial for abuse of discretion. <u>United</u>

18

States v. Segien, 114 F.3d 1014, 1022 (10th Cir. 1997). Defendant contends the district court improperly admitted the evidence under Fed. R. Evid. 608. Rule 608 allows a witness' credibility to "be attacked or supported by evidence in the form of opinion or reputation," but only if the evidence refers to "character for truthfulness or untruthfulness." Subsection (b) allows inquiry on cross-examination into specific instances of conduct, but again only if the conduct relates to truthfulness or untruthfulness. Questioning regarding Defendant's alleged molestation of his daughter and half-sister, however, is unrelated to either Justin's or Defendant's veracity. Cf. United States v. Girdner, 773 F.2d 257, 260-61 (10th Cir. 1985) (proper use of Rule 608(b) evidence). Thus, the evidence was not admissible under Rule 608.

The evidence, if admissible at all, was admissible under Fed. R. Evid. 404(a)(1) and 405(a). The district court briefly mentioned Rule 405 in discussing admissibility of the evidence, but did not explicitly rule the evidence admissible on that basis. We may affirm if the evidence was admissible on any ground or if erroneous admission of the evidence was harmless error. See United States v. Anaya, 117 F.3d 447, 448 (10th Cir. 1997).

Under Rule 404(a)(1), "evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same" is admissible. Rule 405(a) specifies that "[i]n all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form

of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct." Thus, once evidence of defendant's character is offered by defendant (either through defendant or a defense witness), the government may counter that evidence on cross-examination by referencing relevant specific instances of conduct. See 22 Charles A. Wright & Kenneth A. Graham, Jr., Federal Practice and Procedure § 5236 (1978). If Justin's and Defendant's testimony amounted to opinion or reputation testimony of Defendant's character or a pertinent trait thereof, inquiry on cross-examination of specific instances of conduct related to that character or character trait was proper.

Regardless of the defense's proffered explanation for calling Justin, it is apparent he became a witness to his father's good character, and in essence opined that his father's character was such that he was incapable of committing any crimes of this nature. In response to this opinion testimony, the government was entitled to demonstrate that Justin was not fully informed as to his father's character by inquiring into Justin's knowledge of two discrete specific instances of conduct allegedly involving Defendant's daughter and half-sister. See John W. Strong, McCormick on Evidence, § 191, at 816 (1992) ("The prosecution may cross-examine a witness who has testified to the accused's reputation in order to probe the witness's knowledge . . . specifically as to whether the witness 'has heard' that the defendant has committed particular prior criminal acts that conflict with the reputation vouched for . . . . Likewise, if a witness gives his opinion of

20

defendant's character, then the prosecution can allude to pertinent bad acts by asking whether the witness knew of these matters in forming his opinion.").

An additional basis exists to allow cross-examination of Justin regarding the allegations of Defendant's daughter. Defense counsel's last question to Justin on direct examination was: "Justin, has your father ever taken any inappropriate sexual actions with you or your brother, Angelo?" Justin answered, "No, never." By phrasing this question to exclude the daughter, Defendant's third child and Justin's sister, defense counsel left the jury with the impression that Defendant had never been accused of molesting any of his children. The government was entitled to expound on the question to give the jury a more complete understanding of the circumstances. See United States v. Vasquez, 858 F.2d 1387, 1392 (9th Cir. 1988) (testimony allowed on cross-examination that refers to matters "reasonably related to issues the defendant put in dispute by his testimony on direct").

Defendant also put his own character at issue by unswervingly insisting he "was good to everyone." Contrary to Defendant's assertion on appeal, the prosecutor did not place Defendant in a situation where regardless of his answer Defendant would be offering evidence of his character. The prosecutor's questions were confined to Defendant's treatment of Jane Does A, B, and C; Defendant's broad answers to these questions prompted questioning regarding his daughter and half-sister.

Finally, any error in permitting the questioning was harmless in light of the totality

21

of the evidence. The few questions regarding Defendant's daughter and half-sister were brief and only a very small portion of much lengthier cross-examinations, particularly in Defendant's case. The prosecution did not refer to the daughter, who did not testify at trial, in his closing argument. Moreover, the daughter and half-sister were collateral figures in this case. The charges against Defendant were based only on the allegations of Jane Does A, B, and C. The district court emphasized in its jury instructions that a verdict of guilty could not be based on evidence of uncharged offenses but only on proof beyond a reasonable doubt that Defendant committed the charged acts against Jane Does A, B, and C. Finally, the evidence of Defendant's guilt was substantial, if not overwhelming. See Anaya, 117 F.3d at 448 ("[E]rror in the admission of exclusion of evidence is harmless if it does not affect the substantial rights of the parties.").

IV.

In addition to his evidentiary challenges, Defendant argues for the first time on appeal that the district court's limiting instruction regarding the Fed. R. Evid. 414(a) testimony did not adequately guard against the jury's misuse of this propensity evidence. The district court tendered the following instruction to the jury:

> In a criminal case in which the defendant is accused of . . . an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible and may be considered for its bearing on any matter to which it is relevant. However, evidence of a prior offense on its own is not sufficient to prove the defendant guilty of the crimes charged in the indictment. Bear in mind as you consider this evidence at all times, the government has the burden of proving that the defendant committed each of the elements of the offense

22

charged in the indictment. I remind you that the defendant is not on trial for any act, conduct, or offense not charged in the indictment.

Because Defendant did not object to the instruction below, we review for plain error. Fed. R. Crim. P. 52(b). We will deem an error reversible under Rule 52(b) only where the error is plain, clear, or obvious, and affects defendant's substantial rights. United States v. Olano, 507 U.S. 725, 733-34 (1993). In other words, unless the error affected the outcome of the trial, defendant's failure to object forfeits the claim. Id. Under Rule 52(b), Defendant bears the burden of proving the outcome of the trial would have differed but for the error. Id.

The instruction is proper. It begins by tracking the language of Rule 414(a). The instruction then charges the jury that the propensity evidence alone is insufficient to convict Defendant of the crimes charged in the indictment, and that to obtain a conviction, the government must prove each element of the charged offenses. Defendant's argument that the instruction fails to prohibit the jury from considering the propensity evidence in determining his guilt is based upon a faulty premise. Rule 414(a) displaces Fed. R. Evid. 404(b)'s restriction on propensity evidence and allows the government to offer evidence of a defendant's prior sexual misconduct for the purpose of demonstrating the defendant's propensity to commit the charged offense. See Guardia, 135 F.3d at 1329. Because the Rule 414(a) evidence in this case illustrated Defendant's propensity to engage in sexual misconduct similar to that alleged in the indictment, such evidence was probative of his guilt.

23

V.

Defendant also argues that the district court violated his Sixth Amendment right to a fair trial by failing to declare a mistrial after one of Defendant's witnesses, Ethel Lujan, informed the court that during the trial she overheard a discussion between two jurors in the ladies' restroom. Lujan testified in chambers that while she was in the restroom, she heard one juror state to another, "I'm a school teacher. I'm very disturbed about what I'm hearing." The district court denied Defendant's motion for a mistrial, stating:

> I conclude that although there was a comment by a juror about her reaction to what she had heard, that this does not constitute a decision on the merits or a decision as to the guilt of innocence of the defendant, only that she was very disturbed about it. And it does not, in my analysis, create an issue regarding the question of whether or not the defendant had been prejudiced by such premature discussion, if it's really a discussion.

The district court has "wide discretion" in dealing with a motion for a mistrial based on juror misconduct, and we will not disturb the court's ruling on the motion absent an abuse of that discretion. United States v. Jones, 707 F.2d 1169, 1173 (10th Cir. 1983). "The appropriate inquiry . . . is whether either actual bias existed or whether the circumstances compel an imputation of inherent bias to the juror as a matter of law." Id. (internal quotations and ellipses omitted). "[E]ven where juror bias is shown, not every incident requires a new trial. The test is whether . . . the misconduct has prejudiced the defendant to the extent that he has not received a fair trial." Id. (internal quotations omitted).

The Constitution guarantees a defendant a fair trial, not a perfect one. United

24

States v. Mitcheltree, 940 F.2d 1329, 1334 (10th Cir. 1991). In this case, Defendant has shown no actual bias on the part of the juror. Nor does the evidence "compel an imputation of inherent bias to the juror as a matter of law." That the juror was disturbed by the testimony in this case tells us nothing about her attitudes toward Defendant and his guilt or innocence. Nor does it tell us anything about her attitudes toward the witnesses' credibility. The court's questioning of the juror may have only made matters worse and the court properly exercised its discretion in declining to question her. See United States v. Bradshaw, 787 F.2d 1385, 1388-91 (10th Cir. 1986) (district court has discretion in determining whether an evidentiary hearing is necessary on allegations of juror misconduct). The district court did not abuse its discretion in denying Defendant's motion for a mistrial.

## VI.

Finally, Defendant argues that the district court erred in denying his motion for a continuance which he presented to the court the morning of trial. In his motion, Defendant asserted that he needed additional time to review discovery materials which the government had just recently provided. We review the denial of a motion for a continuance of trial for an abuse of discretion. United States v. Simpson, 152 F.3d 1241, 1251 (10th Cir. 1998). We will find an abuse of discretion "only if the district court's decision was arbitrary or unreasonable and materially prejudiced the defendant." Id.

Contrary to Defendant's assertion, the district court did not deny his motion for a

continuance outright. The court granted Defendant a half day continuance, which was all that was warranted. Defendant had requested and obtained three prior continuances. His fourth motion came on the morning of trial, two weeks after the jury had been selected, and as the jury, government, and district court waited to proceed. Defendant has not shown that he was prejudiced by the district court's ruling.

For the foregoing reasons, the judgment of the district court is AFFIRMED.