FILED
United States Court of Appeals
Tenth Circuit

July 22, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

FLOYD LEE MILLER,

      Petitioner - Appellant,

v.

CARL BEAR,

      Respondent - Appellee.

No. 19-5024
(D.C. No. 4:15-CV-00700-TCK-FHM)
(N.D. Okla.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]
_____

Before **MATHESON**, **McKAY**, and **BACHARACH**, Circuit Judges.
_____

An Oklahoma jury found Floyd Lee Miller guilty of manufacturing

methamphetamine and resisting arrest. After unsuccessfully challenging his convictions

in the Oklahoma Court of Criminal Appeals ("OCCA"), he filed for federal relief under

28 U.S.C. § 2254 in the Northern District of Oklahoma. The district court denied his

petition and denied a certificate of appealability ("COA"). Mr. Miller has asked this

court for a COA on whether (1) the evidence at trial was constitutionally sufficient to

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor Mr. Miller's request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument.

This order is not binding precedent, except under the doctrines of law of the
case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and
10th Circuit Rule 32.1.

sustain his conviction for manufacturing methamphetamine, (2) Mr. Miller's trial and appellate counsel were ineffective regarding how they handled the issue of the search of his backpack at the time of arrest, and (3) the district court erred in denying an evidentiary hearing on Mr. Miller's ineffective assistance of counsel ("IAC") claim. Exercising jurisdiction under 28 U.S.C. § 1291, we deny his request for a COA and dismiss this matter.

## I.  BACKGROUND

### A.  *Factual Background*

In 2011, Miami, Oklahoma Police Sergeant Michael Kelly saw Mr. Miller walking down the street with a backpack around 2:00 a.m.  Sergeant Kelly pulled his car over and began speaking with Mr. Miller.  When Mr. Miller identified himself as "Punkin' Miller," Sergeant Kelly recognized him and recalled there might be warrants for his arrest.  He radioed for backup, Officer Kelly Johnson arrived at the scene, and dispatch confirmed Mr. Miller had warrants for his arrest.

Officer Johnson testified at trial that when he arrived, "Sergeant Kelly was talking to Mr. Miller like they were old friends . . . and told Mr. Miller that he had warrants out of the county that he needed to take care of."  ROA, Vol. III at 192.  Mr. Miller was still wearing his backpack.  As Officer Johnson left his car, Mr. Miller placed the backpack on the ground next to him and continued talking to Sergeant Kelly.

Officer Johnson approached the two men and told Mr. Miller to "turn around and put his hands behind his back" so that he could be handcuffed.  *Id.* at 193.  Mr. Miller

2

initially complied, but once Officer Johnson made physical contact with him, "he took off running." *Id.* at 194. Officer Johnson described what happened next:

> We went through, and I'm not sure exact distance, maybe a yard or two, and once he was trying to step up on a step I was able to—in the way my steps were working I was able to extend one of my steps to kick his back foot, and he turned around and faced me and we both fell to the ground. I actually tackled him to the ground at that point.

*Id.* at 194. The officers subdued and arrested Mr. Miller

The officers then searched Mr. Miller's backpack, which was still sitting next to Sergeant Kelly's car where Mr. Miller had placed it. Officer Johnson said they conducted the search "because [they were] going to have to take his property . . . to the county to be booked in and I had to make sure there wasn't any contraband or weapons in the backpack." *Id.* at 197. In the backpack, they found a 20-ounce partially melted plastic bottle that Officer Johnson "thought . . . was a meth lab." *Id.*[1]

A third officer—Narcotics Detective Hicks—arrived on the scene after Mr. Miller's arrest. He examined the bottle and concluded it showed "tell-tale" signs of methamphetamine manufacturing. ROA, Vol. III at 201-02. Testing on the bottle's contents revealed methamphetamine and ephedrine residue. State witnesses testified that the bottle looked like it had been used as a "shake and bake" one-pot vessel for cooking methamphetamine. The officers also testified that they did not find any of the "fuel" necessary to make methamphetamine on Mr. Miller's person or in his backpack.

---

[1] The officers also recovered from the backpack Mr. Miller's driver's license and prescription pill bottles with Mr. Miller's name on them.

B. *Procedural Background*

The State charged Mr. Miller with (1) manufacturing a controlled dangerous substance after a felony and (2) resisting arrest. An Oklahoma jury convicted him of both counts. He was sentenced to 17 years in prison, with two years suspended. Mr. Miller appealed to the OCCA, arguing the evidence was insufficient to support the methamphetamine conviction. The OCCA affirmed his conviction and sentence.

Mr. Miller then sought post-conviction relief in state court. He argued the officers' warrantless search of his backpack violated the Fourth Amendment. He further argued he had not waived this issue because (1) his trial counsel was constitutionally ineffective for failing to file a motion to suppress and (2) his appellate counsel was ineffective for failing to argue the Fourth Amendment issue on direct appeal.

The Oklahoma district court denied Mr. Miller's Fourth Amendment and IAC claims, holding that Mr. Miller abandoned his backpack and that he "ha[d] no standing to object to the search of abandon [sic] property." ROA, Vol. I at 68.

Mr. Miller appealed, and the OCCA affirmed. Rejecting Mr. Miller's arguments regarding the warrantless search of his backpack, the OCCA stated:

> Petitioner argues that the warrantless search of his backpack, which uncovered the evidence used to convict him, was not a valid search incident to arrest because he was removed from the backpack and thus it was not within his immediate reach and control. However, the District Court did not find the search was incident to Petitioner's arrest. The District Court found, and the record provides ample support for the finding, that Petitioner placed the backpack on the ground and then fled from the arresting officers thereby abandoning the backpack. There can be no complaint of

4

illegal search when police officers search without a warrant and seize abandoned property.

In attempting to establish that the District Court erred by finding Petitioner had abandoned the backpack, Petitioner argues that attempting to run a few yards when told he was being placed under arrest does not constitute abandonment of the property. However, if Petitioner's actions were not an abandonment of the backpack, then the backpack was still within the area within Petitioner's immediate control such that he could detonate a bomb or destroy evidence, and the officers had legitimate concern for their safety. The officers' search would thus fall under the warrantless search exception of being incident to Petitioner's arrest. Petitioner's appellate counsel apparently realized the conundrum that, no matter which way he argued the facts of Petitioner's case, the evidence would be admissible under an exception allowing the warrantless search. We do not find that Petitioner's appellate counsel was unprofessional, or that the result of his appeal would have or should have been different.

ROA, Vol. II at 94-95 (citations omitted).[2] In short, the OCCA said the search was valid under either the abandonment or search-incident-to-arrest exceptions to the warrant requirement, and therefore rejected his IAC claim.

Mr. Miller then filed a petition for federal habeas corpus relief under 28 U.S.C. § 2254 in the U.S. District Court for the Northern District of Oklahoma. He asserted three grounds for relief: (1) insufficiency of the evidence, (2) illegal search and seizure and IAC, and (3) newly discovered evidence. The district court rejected all three grounds

---

[2] The OCCA addressed only the effectiveness of Mr. Miller's appellate counsel on the merits. It concluded that Mr. Miller's "trial and appellate counsel were not the same; therefore, his claims that trial counsel was ineffective are waived because they could have been raised in his direct appeal." ROA, Vol. II at 93.

and denied his request for a COA.  Mr. Miller timely appealed, challenging the district court's resolution of the first two issues.

## II.  DISCUSSION

Mr. Miller contends (1) the trial evidence was constitutionally insufficient to sustain his conviction for manufacturing methamphetamine, and (2) trial and appellate counsel were ineffective regarding the search issue.[3]  He asks for a COA on both issues.

### A.  *COA and AEDPA*

We must grant a COA to review the district court's denial of a § 2254 petition. *See* 28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003).  To receive a COA, the petitioner must make "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and must show "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotations omitted).

Under AEDPA, when a state court has adjudicated the merits of a claim, a federal district court cannot grant habeas relief on that claim unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1),

---

[3] Mr. Miller also argues the district court erred in denying his request for an evidentiary hearing on his ineffective assistance of counsel claim and separately asks for a COA on that issue.  Aplt. Br. at 20-22.  We resolve the evidentiary hearing claim below when we address the merits of his argument under the Fourth and Sixth Amendments.

or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2).

When the district court has denied habeas relief because the petitioner failed to overcome AEDPA, our COA decision requires us to determine whether reasonable jurists could debate the court's application of AEDPA to the state court's decisions. *Miller-El*, 537 U.S. at 336.

## B. *Sufficiency of the Evidence*

### 1. **Legal Background**

Under the Due Process Clause of the Fourteenth Amendment, a defendant cannot be convicted of a crime unless the state proves, beyond a reasonable doubt, every essential element of the crime charged. *See Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *In re Winship*, 397 U.S. 358, 364 (1970). On federal habeas review, a district court must decide under AEDPA whether the state courts have reasonably determined "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.

To convict Mr. Miller of manufacturing methamphetamine, the State needed to prove that he (1) knowing and intentionally, (2) manufactured, (3) a controlled dangerous substance (methamphetamine). *Vilandre v. State*, 113 P.3d 893, 895 n.1 (Okla. Crim. App. 2005); *see* Okla. Stat. tit. 63, § 2-401(G); Okla. Unif. Crim. Jury Instr. No. 6-3. Oklahoma law defines manufacturing as "the production, preparation, propagation, compounding or processing of a controlled dangerous substance, either directly or

7

indirectly by extraction from substances of natural or synthetic origin, or independently by means of chemical synthesis or by a combination of extraction and chemical synthesis." Okla. Stat. tit. 63 § 2-101(22).

2. **Analysis**

Mr. Miller argues the district court—and by inference the OCCA—"failed to come to grips with the fact that one of the essential ingredients for the manufacture of methamphetamine—fuel—was not found in Mr. Miller's possession." Aplt. Br. at 13. He concedes the evidence at trial showed he possessed a soda bottle that was used to manufacture methamphetamine, but he claims that evidence failed to prove he made the illegal drug. He argues the jury's conclusion to the contrary constituted an unsupported "leap[] of logic." Aplt. Br. at 14.

The evidence at trial showed police found the "shake and bake" soda bottle in Mr. Miller's backpack along with his driver's license and prescription pill bottles bearing his name. The jury could reasonably conclude that the bottle belonged to Mr. Miller. *See Jackson*, 443 U.S. at 319. Detective Hicks explained that the bottle showed "tell-tale" signs of being used to manufacture methamphetamine. *See* ROA, Vol. II at 165. And the State's chemist confirmed that the substance in the bottle tested positive for ephedrine—a precursor substance used to make methamphetamine—and for methamphetamine itself.

Viewing these facts in the light most favorable to the State, the district court held that the OCCA reasonably concluded that a rational jury could find that Mr. Miller used the bottle to knowingly manufacture methamphetamine. *See* Okla. Stat. tit. 63, § 2-401(G); *see United States v. Poe*, 556 F.3d 1113, 1126 n.16 (10th Cir. 2009) ("[T]he

8

mere existence of an alternative explanation does not require the finding of reasonable doubt.").[4]  Based on our review of the record and the OCCA's opinion, we conclude that reasonable jurists could not debate the district court's denial of habeas relief on this ground.  We deny a COA on the issue.

## C. *Ineffective Assistance of Counsel*

Mr. Miller argues that his trial and appellate counsel were constitutionally ineffective regarding the evidence officers recovered from his backpack.  We understand the argument to be that (1) trial counsel should have challenged the search through a motion to suppress, and (2) appellate counsel should have argued on appeal or in post-conviction proceedings that trial counsel was ineffective for failure to move to suppress.

In denying habeas relief, the district court said that, because the searched property had been abandoned, counsel provided effective assistance.  We agree, but unlike the district court, we discuss each argument separately.

---

[4] The lack of fuel in Mr. Miller's possession does not undermine the jury's verdict.  As explained at trial, consumption of fuel triggers the chemical process that produces methamphetamine.  *See* ROA, Vol. III at 214.  Once the fuel is exhausted, the reaction stops and does not produce any additional methamphetamine.

The absence of fuel on Mr. Miller's person does not mean the manufacturing process never happened.  *See United States v. Hill*, 786 F.3d 1254, 1261 (10th Cir. 2015) (explaining that juries have wide latitude to make logical inferences).  Instead, Mr. Miller's possession of a bottle that manufactured methamphetamine allows for the reasonable inference that the chemical reaction had finished by the time the officers encountered Mr. Miller.

1. **Trial counsel IAC**

The first argument about trial counsel is procedurally barred. As noted above, the OCCA said Mr. Miller waived this claim because it could have been raised in his direct appeal. *See* ROA, Vol. II at 93. A "procedural default prevents a federal court from reviewing the merits of a claim—including constitutional claims—that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Williams v. Trammell*, 782 F.3d 1184, 1212 (10th Cir. 2015).

Mr. Miller has not challenged the OCCA's waiver determination. He further has not shown his procedural default rested on a basis other than "an *independent* and *adequate* state procedural rule," nor has he attempted to "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Although the district court did not address Mr. Miller's procedural default of the trial counsel IAC issue before the OCCA, we may deny COA on a ground that is supported by the record even if it was not relied on by the district court. *See Davis v. Roberts*, 425 F.3d 830, 834 (10th Cir. 2005). Based on the foregoing, we conclude that reasonable jurists could not debate the district court's denial of habeas relief on Mr. Miller's IAC claim about trial counsel.

2. **Appellate counsel IAC**

As to the second argument about appellate counsel, the OCCA decided that issue on the merits, so AEDPA review applies. Even though the trial counsel IAC issue is

procedurally barred, we nonetheless must discuss trial counsel's effectiveness to resolve the appellate counsel issue. This is so because, if trial counsel was not ineffective, appellate counsel could not have been ineffective in failing to make an argument about trial counsel on appeal.

3. **Legal Background**

a. *Fourth Amendment and ineffective assistance of counsel*

The Supreme Court has held that defendants may not bring Fourth Amendment challenges in habeas proceedings when they could have raised the same challenges in pretrial proceedings. *Stone v. Powell*, 428 U.S. 465, 469, 494 (1976). But a habeas petitioner may allege counsel was ineffective for failure to move to suppress. In *Kimmelman v. Morrison*, 477 U.S. 365, 368, 383 (1986), the Supreme Court said that although habeas petitioners may not raise Fourth Amendment arguments, they may allege counsel's ineffectiveness for failing to file a "timely motion to suppress evidence allegedly obtained in violation of the Fourth Amendment."

b. *The Sixth Amendment right to effective counsel*

To succeed on a claim for ineffective assistance of counsel, *Strickland v. Washington*, 466 U.S. 668 (1984), requires a showing of (1) deficient performance that (2) causes prejudice. *Id.* at 687. The first step requires showing that defense counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* The performance assessment is "highly deferential." *Id.* at 689. Counsel's actions are presumed to constitute "sound trial strategy." *Id.* at 690 (quotations omitted). At the second step, *Strickland*

11

requires demonstration that counsel's errors and omissions resulted in actual prejudice, *id.* at 687; that is, "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

When coupled with AEDPA, the *Strickland* standard is doubly deferential. *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). The state court must defer to counsel's trial strategy, granting wide latitude to strategic decisions. *See Ryder ex rel. Ryder v. Warrior*, 810 F.3d 724, 744 (10th Cir. 2016). The federal habeas court must defer to the state court's evaluation of counsel's performance under AEDPA. *See id.*

c. *The Fourth Amendment right to be free from unreasonable searches*

Under the Fourth Amendment, warrantless searches are "per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). The exceptions relevant here are (1) abandonment and (2) search incident to arrest.

i. Abandonment

Individuals do not retain Fourth Amendment rights in property they abandon. *Abel v. United States*, 362 U.S. 217, 241 (1960). Voluntary relinquishment of property control eliminates the owner's reasonable expectation of privacy in the property. *See California v. Greenwood*, 486 U.S. 35, 40 (1988). For example, in *Greenwood*, the Supreme Court held a defendant had no expectation of privacy in

12

garbage placed in opaque plastic bags outside the curtilage of his home because it was "readily accessible to animals, children, scavengers, snoops, and other members of the public." *Id*. at 41 (footnotes omitted).

During Prohibition, the Supreme Court held that bootleggers who had discarded their jugs of moonshine whiskey in a field while running from law enforcement had abandoned those jugs and could not succeed in challenging the government's seizure of the jugs. *Hester v. United States*, 265 U.S. 57, 58 (1924). The Court later held a juvenile defendant had abandoned a rock of crack-cocaine by throwing it aside while running from the police. *California v. Hodari D.*, 499 U.S. 621, 624, 629 (1991).[5]

Merely relinquishing physical control of an item is not the same as abandoning it. For example, in *Smith v. Ohio*, 494 U.S. 541, 543-44 (1990) (per curiam), the Court held the defendant did not abandon his paper bag when he threw it on the hood of his car before speaking with police. Likewise, "[a] passenger who lets a package drop to the

---

[5] This circuit has interpreted the Supreme Court's cases to hold that, when a defendant discards an item on a third-party's property while fleeing from the police and does not claim ownership of the property, he has abandoned that property. "[A]bandonment occurs if either (1) the owner subjectively intended to relinquish ownership of the property or (2) the owner lacks an objectively reasonable expectation of privacy in the property." *United States v. Easley*, 911 F.3d 1074, 1083 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 1644 (2019); *see United States v. Morgan*, 936 F.2d 1561, 1571 (10th Cir. 1991) (allowing warrantless search of bag that defendant had discarded in neighbor's yard when defendant did not claim ownership of the bag); *United States v. Jones*, 707 F.2d 1169, 1170, 1172-73 (10th Cir. 1983) (concluding defendant abandoned his satchel when he left it outside the building he was hiding in and denied ownership of it); *United States v. Juszczyk*, 844 F.3d 1213, 1214-15 (10th Cir.), *cert. denied*, 138 S. Ct. 100 (2017) (concluding defendant abandoned his bag when he placed it on third-party's roof when he did not have permission to access the roof).

floor of the taxicab in which he is riding can hardly be said to have 'abandoned' it." *Rios v. United States*, 364 U.S. 253, 262 n.6 (1960).

ii. Search incident to arrest

To protect officers and prevent the destruction of evidence, the Fourth Amendment allows officers to search individuals without a warrant if that search is incident to the defendant's lawful arrest. *See Arizona v. Gant*, 556 U.S. 332, 339 (2009). A court does not need to inquire whether a search of the arrested person is necessary on a case-by-case basis. *United States v. Robinson*, 414 U.S. 218, 235 (1973). This exception to the warrant requirement extends only to the "area within [the] immediate control" of the arrestee, which means "the area from within he might gain possession of a weapon or destructible evidence." *Chimel v. California*, 395 U.S. 752, 763 (1969) (quotations omitted).

2. **Analysis**

As noted above, because the OCCA resolved Mr. Miller's Sixth Amendment claim regarding his appellate counsel on the merits, its decision is entitled to AEDPA deference. The OCCA held (1) that Mr. Miller abandoned his backpack when he left it in front of Sergeant Kelly's car and fled from the officers and (2) appellate counsel therefore was not ineffective for failing to argue that trial counsel was ineffective for failing to file a motion to suppress. The OCCA buttressed its analysis by pointing out that if Mr. Miller, having managed to run only a few yards, did not abandon his backpack, its proximity to him allowed for a search incident to arrest. The district court

14

concluded the OCCA did not unreasonably apply clearly established Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1); ROA Vol. II at 167.

In addressing the COA question, we ask if reasonable jurists could debate whether the district court correctly determined under AEDPA that the OCCA's decision was a reasonable application of Supreme Court law. *See Miller-El*, 537 U.S. at 336. Note that the OCCA's decision was based on its determination that the search of Mr. Miller's backpack was valid under the abandonment or the search-incident-to-arrest exceptions.

In his brief to this court, Mr. Miller argues he "simply placed the backpack on the ground" and did not discard it when he fled. Aplt. Br. at 18. The trial evidence showed Mr. Miller removed his backpack and placed it on the ground while he was speaking with the officers. When Officer Johnson instructed Mr. Miller to turn around to be handcuffed, Mr. Miller started to run away. He left his backpack. Because he fled, this situation is not the same as placing his backpack on the hood of a car to speak with police, as the defendant did in *Smith*, 494 U.S. at 543-44. Nor is it the same as placing a bag on the floor of taxi, as the defendant did in *Rios*, 364 U.S. at 262 n.6.

Even if there is room to debate the OCCA's analysis of whether Mr. Miller did enough to abandon the backpack or whether the backpack was close enough to him to be searched incident to arrest, we have explained that, under AEDPA, the state court's "application of Supreme Court law may be incorrect without being unreasonable." *Lockett v. Trammell*, 711 F.3d 1218, 1231 (10th Cir. 2013); *see Williams v. Taylor*, 529 U.S. 362, 410 (2000). Indeed, to qualify for relief, Mr. Miller must convince the district

15

court that "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The district court properly determined that the OCCA did not unreasonably apply the Supreme Court's abandonment precedent to the circumstances of this case.

The district court held that the OCCA was not unreasonable under AEDPA. Reasonable jurists may be able to debate the OCCA's determination, but not the district court's.[6]

## III. **CONCLUSION**

We deny a COA and dismiss this matter.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

---

[6] Mr. Miller also asserts the OCCA made an unreasonable determination of fact in concluding that he abandoned his backpack and argues the district court abused its discretion in denying his request for an evidentiary hearing. But he does not contest that Mr. Miller fled from the officers when they tried to arrest him. Nor does he identify any other factual issue that might bear on the abandonment question. We therefore deny a COA on Mr. Miller's request for an evidentiary hearing.