**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

RUFUS LOU NELSON, JR.,

    Defendant - Appellant.

No. 19-6072
(D.C. No. 5:18-CR-00130-C-1)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT***
_____

Before **LUCERO**, **McHUGH**, and **MORITZ**, Circuit Judges.
_____

Rufus Lou Nelson, Jr., challenges his convictions for carjacking, kidnapping,

and use and discharge of a firearm during and in relation to a crime of violence.

He also challenges the procedural and substantive reasonableness of his 480-month

sentence.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.     Background

In the early morning hours on July 5, 2016, Mr. Nelson shot his longtime

---

* After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

girlfriend, Priya Patel, in the face while she was driving on a highway in Oklahoma City, destroying her eyes and optic nerves and causing permanent blindness.

The witnesses' testimony aligns as to many underlying facts. The couple spent the July 4th holiday with Mr. Nelson's sister, Velma, who made them leave the house late that night after a family fight. They got into a car with a loaded .45-caliber handgun, with Ms. Patel behind the wheel and Mr. Nelson in the front passenger seat. Sometime after midnight, while Ms. Patel was driving, the couple got into an argument and Mr. Nelson shot her in the face. Unable to see, she pulled over to the side of the road, where they both exited the car. Two Good Samaritans found Ms. Patel walking on the side of the highway around 2:00 a.m. with extensive eye injuries. She told them, and later the police, that Mr. Nelson had shot her. Mr. Nelson left the scene, and law enforcement officers apprehended him after searching the area. He initially told the police they had picked up a drug-dealing stranger, who shot Ms. Patel while trying to rob them; however, at trial Mr. Nelson testified that he shot Ms. Patel by accident. Law enforcement never located the firearm, but they found a single, .45-caliber shell casing on the floorboard of the vehicle's front passenger side.

The witnesses disagree on some critical details. Mr. Nelson insists Ms. Patel got into the car voluntarily and indeed had no choice but to leave with him because of the troubled family dynamics. He testified that both of them ingested several mind-altering drugs that night. He further testified that he accidentally shot Ms. Patel during an argument in the car. According to Mr. Nelson, Ms. Patel was

2

holding her own gun underneath her leg while she was driving, and she started waving and swinging it during their argument. When he tried to take the gun from her, it accidentally discharged. Mr. Nelson left the scene and lied to the police about what happened because he was afraid he would get in trouble for having drugs in the car. By contrast, Ms. Patel testified during the state-court preliminary hearing that Mr. Nelson forced her into the car with his own gun, directed her to drive him to several locations at gunpoint, refused to let her leave the car, and shot her after making threatening remarks and accusing her of cheating on him.

A federal grand jury indicted Mr. Nelson on four counts: being a convicted felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1) (Count 1); carjacking resulting in serious injury in violation of 18 U.S.C. § 2119 (Count 2); kidnapping in violation of 18 U.S.C. § 1201(a)(1) (Count 3); and use and discharge of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A) (Count 4). After a three-day trial, a jury found Mr. Nelson guilty on all counts. The district court sentenced him to 480 months' imprisonment: 120 months for Count 1, 300 months for Count 2, and 360 months for Count 3, running concurrently; and 120 months for Count 4, running consecutively.

## II.    Discussion

On appeal, Mr. Nelson contends the district court erred when it (1) declared Ms. Patel to be unavailable and admitted her testimony from the state-court preliminary hearing; (2) admitted photographs of Ms. Patel's gunshot wound; (3) relied on Mr. Nelson's kidnapping conviction to support his § 924(c) conviction

3

and to enhance his sentence under the career-offender guideline; (4) sentenced Mr. Nelson as a career offender based on a prior conviction that is not a controlled substance offense; (5) held there was sufficient evidence from which the jury could find beyond a reasonable doubt that all offenses occurred; and (6) imposed a substantively unreasonable sentence. We affirm the district court on each issue.

### A.     Sixth Amendment Right to Confront Accuser

Under the Sixth Amendment's Confrontation Clause, a criminal defendant has a right "to be confronted with the witnesses against him." U.S. Const. amend. VI. Mr. Nelson argues that the district court violated his constitutional right to confront Ms. Patel when it prematurely declared her to be unavailable and allowed the government to present to the jury her testimony from a state-court preliminary hearing under Federal Rule of Evidence 804. We reject this argument. The district court properly applied Rule 804, and the admission of Ms. Patel's sworn preliminary hearing testimony was necessary and appropriate under the circumstances.

Ms. Patel was a reluctant witness from the start. She told the government she was afraid of the defendant and vacillated on her willingness to testify—then, she refused to obey the government's trial subpoena. The district court had to issue a bench warrant for her appearance at trial. She appeared on September 4, 2018, but when the government, defense counsel, and the district court questioned her, she repeatedly stated that she did not remember anything about the critical events underlying the charges against Mr. Nelson. She told the district court that she had only "bits and pieces of memory." R., Vol. 3 at 144. She also expressed a firm

4

desire to move on from the event that caused her blindness: "I don't want to be here. I'm trying to put an end to this. I have accepted this. I'm trying to move on with my life. I don't want to be here." *Id.* at 145. During direct examination, she testified that she could not recall anything about the shooting, including who shot her. *See, e.g.*, *id.* at 132-33 ("Q. Ms. Patel, did somebody do something to you to cause you not to be able to see? A. Yes. Q. And who did that? A. I don't know. . . . Q. [D]o you recall telling a number of people that Mr. Nelson was the one who caused your blindness? A. Yes. Q. Is that because Mr. Nelson did cause your blindness? A. That, I do not know."); *id.* at 139-40 ("Q. Did Rufus Nelson have a gun? A. I don't remember. . . . Q. Do you recall testifying previously that he had a gun? A. I don't remember.").

The district court ultimately concluded the questioning was not "productive" because Ms. Patel was "still not remembering anything of any relevance." *Id.* at 151. Invoking Rule 804, it declared her to be unavailable and allowed the government to read her state-court preliminary hearing testimony from December 15, 2016, into the record, over Mr. Nelson's objection. Defense counsel twice moved for a mistrial, positing that "Ms. Patel, while not an easy witness, had not fully proven herself to be an *absolutely unavailable* witness." *Id.* at 275 (emphasis added). The district court denied both motions. It acknowledged live testimony would be preferable to the transcript of the preliminary hearing from sixteen months ago but reasoned it would be unfair to allow Mr. Nelson to obtain testimony from Ms. Patel unless she also was willing and able to answer the government's questions. It concluded she was neither.

5

"We review the admission of evidence at trial for abuse of discretion." *United States v. Collins*, 575 F.3d 1069, 1073 (10th Cir. 2009). "Because hearsay determinations are particularly fact and case specific, our review of those decisions is especially deferential." *Id*. (internal quotation marks omitted). But "whether admission of such evidence violates the Confrontation Clause is reviewed de novo." *United States v. Townley*, 472 F.3d 1267, 1271 (10th Cir. 2007). A witness's prior testimony, including preliminary hearing testimony, is inadmissible unless the witness is unavailable to testify and the defendant has had a prior opportunity for cross examination. *Crawford v. Washington*, 541 U.S. 36, 53, 68 (2004).

We start by assessing Ms. Patel's unavailability. Rule 804 provides that the "[f]ormer [t]estimony" of a witness is not excluded as hearsay "if the declarant is unavailable as a witness." Fed. R. Evid. 804(b)(1). The unavailability assessment often turns on the reasonableness of the prosecution's effort to obtain a witness's attendance. *See Cook v. McCune*, 323 F.3d 825, 835-36 (10th Cir. 2003). But Mr. Nelson does not fault the government for its efforts to obtain Ms. Patel's attendance, so we need not conduct a reasonableness analysis on that question.

Instead, we evaluate Mr. Nelson's contention that the district court's unavailability determination was premature given that she was "showing increasing willingness to answer questions." Aplt. Opening Br. at 24. Mr. Nelson insists his attorneys could have made Ms. Patel feel comfortable enough to testify, given enough time. But we will not second guess the district court's determination that further questioning would have been unproductive. The record shows the district

6

court gave the attorneys ample opportunity to elicit live testimony from Ms. Patel and even tried to question her itself after warning her of the risk of sanctions. Yet she repeatedly testified that she did not remember relevant subject matter. "A declarant is considered to be unavailable as a witness *if the declarant . . . testifies to not remembering the subject matter*." Fed. R. Evid. 804(a)(3) (emphasis added). Ms. Patel did just that, so it was appropriate for the district court to declare her unavailable.

It was also appropriate for the district court to admit Ms. Patel's state-court preliminary hearing testimony. Former testimony is admissible if the witness gave it "at a . . . hearing, . . . during the current proceeding or a different one." *Id.* 804(b)(1)(A). It must be "offered against a party who had . . . an opportunity and similar motive to develop it by direct, cross-, or redirect examination." *Id.* 804(b)(1)(B).

Mr. Nelson argues he did not have an opportunity to cross examine Ms. Patel during the preliminary hearing because it "was held in a different forum having a different purpose . . . , with different attorneys, . . . without the benefit of first receiving discovery which is essential to preparing a vigorous, or at least adequate, cross-examination for trial purposes." Aplt. Opening Br. at 25. But "[t]he Confrontation Clause guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent the defense might wish." *United States v. McHorse*, 179 F.3d 889, 900 (10th Cir. 1999) (internal quotation marks admitted). "Ordinarily, a witness is regarded as subject to

7

cross-examination when she is placed on the stand, under oath, and responds willingly to questions." *Id.* (brackets and internal quotation marks omitted). Thus, the district court correctly advised the jury that Mr. Nelson was represented by counsel at the preliminary hearing and that such counsel "had an opportunity to cross-examine and to protect his rights." R., Vol. 3 at 154. Notably, the district court also clarified that none of the trial attorneys on either side were present at the hearing.

Last, Mr. Nelson argues that Ms. Patel's preliminary hearing testimony was not reliable enough to satisfy constitutional demands because she agreed to testify in exchange for the dismissal of pending charges for use of a vehicle to facilitate a drive-by shooting. It is true that "where a witness has special reason to favor the prosecution, such as an immunity arrangement in exchange for cooperation, the defendant's interest in confronting the witness is stronger." *Cook*, 323 F.3d at 836; *see also Davis v. Alaska*, 415 U.S. 308, 316-17 (1974) ("[T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination."). But "the demands of the Confrontation Clause are satisfied where a defendant has the opportunity to reveal weaknesses in the witness' testimony." *McHorse*, 179 F.3d at 900. And Ms. Patel's immunity agreement is evident in the trial transcript. *See, e.g.*, R., Vol. 3 at 170 ("Q. In exchange for your truthful testimony in this matter, do you understand that I'm agreeing to dismiss that case against you? A. Yes, sir.").

For these reasons, the district court did not err in conducting its Rule 804 analysis, and the Confrontation Clause's requirements were satisfied.

## B.     Photographs of Victim's Injuries

Mr. Nelson next argues that the district court erred by admitting photographs of Ms. Patel's gunshot wounds because the danger of unfair prejudice and confusion from those photographs substantially outweighed their probative value under Federal Rule of Evidence 403.  We are not persuaded.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of" unfair prejudice or other factors.  *Id.* 403.  Of course, "relevant evidence of a crime which the government must introduce to prove its case is by its nature detrimental to a defendant who asserts that he is not guilty of the charged offense."  *United States v. Irving*, 665 F.3d 1184, 1213 (10th Cir. 2011).  But evidence is only unfairly prejudicial "if it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence."  *Id.* at 1213-14 (brackets and internal quotation marks omitted).

A police officer took the photographs in question after Ms. Patel's admission to the emergency room, before medical professionals cleaned and treated the gunshot wound to her eyes.  Significant irreversible damage to her left eye is evident, and

there is blood on her face and on the sheets of her hospital gurney. The government moved the district court to preadmit these photographs, arguing they were necessary to prove that Mr. Nelson intended to cause death or serious bodily injury and that Ms. Patel actually sustained serious bodily injury (two elements of carjacking) and to prove that Mr. Nelson discharged a firearm (an element of § 924(c), as charged). Mr. Nelson responded that the photographs establish only that Ms. Patel sustained serious bodily injury (which is undisputed)—they reveal nothing of Mr. Nelson's intent (which is disputed). He argued that the photographs could trigger an emotional response in jurors, causing them not to think objectively, and asked the district court to require the government to provide its evidence through less graphic means such as witness testimony.

The district court admitted the photographs before trial. It found the photographs "have at least some tendency to demonstrate that defendant intended to cause Patel serious bodily injury." R., Vol. 3 at 27. It reasoned that "while they are very graphic, they are not more prejudicial than probative." *Id.* Mr. Nelson unsuccessfully renewed his objection to the photographs' admission during the trial.

Mr. Nelson now takes issue with the district court's rulings. He characterizes the photographs as "hugely prejudicial," "gruesome, unsettling images" that "clouded the issues by forcing jurors to look at a gory mess they could not unsee, when they were already perfectly well-informed on the nature and extent of Ms. Patel's injuries." Aplt. Opening Br. at 30-31; *see also id.* at 29 ("The photographs show serious injury and a copious amount of blood."). He also argues that the photographs

10

lack *any* probative value because they do not shed light on a disputed element of his crimes, such as intent. Moreover, the injuries they depict could have been caused by accidental discharge of a firearm, consistent with Mr. Nelson's defense. The government responds that the photographs accurately depict the victim's condition and contradict Mr. Nelson's account of an accidental shooting. Mr. Nelson testified that he thought Ms. Patel was "okay" when he left the scene. *See* R., Vol. 3 at 344. But her condition at the hospital disproves his testimony and supports the government's theory that Mr. Nelson fled the scene because the shooting was intentional.

"The admission of photographs into evidence is reviewed for an abuse of discretion." *United States v. Pettigrew*, 468 F.3d 626, 638 (10th Cir. 2006). We "afford[] the district court considerable discretion in performing the Rule 403 balancing test because district court judges have front-row seats during trial and extensive experience ruling on evidentiary issues." *United States v. Archuleta*, 737 F.3d 1287, 1292 (10th Cir. 2013) (internal quotation marks omitted). Additionally, "we give the evidence its maximum reasonable degree of relevance and its minimum reasonable danger of unfair prejudice." *United States v. Duran*, 941 F.3d 435, 445 (10th Cir. 2019) (internal quotation marks omitted), *cert. denied*, No. 19-7255, 2020 WL 873626 (U.S. Feb. 24, 2020).

The exclusion of admissible evidence under Rule 403 "is an extraordinary remedy" that "should be used sparingly." *United States v. Silva*, 889 F.3d 704, 712 (10th Cir. 2018) (internal quotation marks omitted). The district court's balancing of

11

the prejudicial effect of photographs against their probative value is "rarely disturbed." *Pettigrew*, 468 F.3d at 638 (internal quotation marks omitted). *See, e.g.*, *United States v. Soundingsides*, 820 F.2d 1232, 1243 (10th Cir. 1987) (no abuse of discretion in admission of autopsy photos); *United States v. Sides*, 944 F.2d 1554, 1562-63 (10th Cir. 1991) (no abuse of discretion in close-up photographs revealing the victim's wounds and blood-stained shirt); *United States v. Naranjo*, 710 F.2d 1465, 1468-69 (10th Cir. 1983) (no abuse of discretion in admission of photographs of a victim who was shot in the face).

We discern no abuse of discretion here. Mr. Nelson focuses heavily on the gory and gruesome nature of the photographs, but "gruesomeness alone does not make photographs inadmissible." *Naranjo*, 710 F.2d at 1468. We recognized in *Naranjo* that a photograph of a person who was shot in the face was "of course disturbing," but we rejected the notion of "protect[ing]" the jury from the photograph because it was "not unduly nor designedly inflammatory" or "so shocking as to have unfairly prejudiced the defendant." *Id.* at 1468-69 (internal quotation marks omitted). Ms. Patel's photographs do not fall into those categories either.

Mr. Nelson also argued to the district court that the government did not *need* to introduce the photographs because he was willing to stipulate to the existence and nature of Ms. Patel's injuries. But the Supreme Court has made clear that "the prosecution is entitled to prove its case by evidence of its own choice," recognizing that "a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it." *Old Chief v. United States*, 519 U.S. 172, 186, 189

12

(1997). Though its ruling was brief, the district court identified at least one way in which the photographs are relevant and appropriately admitted them to allow the government to present its case with "evidence of its own choice."

## C. Kidnapping, § 924(c), and the Career-Offender Sentencing Guidelines

Mr. Nelson contends his conviction for kidnapping under 18 U.S.C. § 1201 is not a crime of violence under the elements clause of § 924(c)(3)(A), so it cannot support his § 924(c) conviction for use and discharge of a firearm in relation to a crime of violence. He cites our unpublished decision in *United States v. Hopper*, 723 F. App'x 645 (10th Cir. 2018),[1] and two cases from outside this circuit. He then extends the reasoning in these cases to the career-offender sentencing guideline: United States Sentencing Commission, *Guidelines Manual*, § 4B1.2.

Mr. Nelson acknowledges he "did not raise this issue before the district court with respect to its implications either to the trial or to the sentencing process." Aplt. Opening Br. at 33. Before an appellate court can correct an error not raised at trial, there must be "(1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005)

---

[1] This court issued *Hopper* three months before the government filed the superseding indictment and four months before the jury trial. We examined the residual clause in § 924(c)(3)(B) and found it to be unconstitutionally vague under a plain error standard. Although the residual clause was our main focus, the parties also "concede[d] and we agree[d] that kidnapping under § 1201(a) . . . does not fit within the elements clause because it can be committed by 'inveigling,' which does not involve force." 723 F. App'x at 646.

(en banc) (internal quotation marks omitted). The "silent defendant" bears the burden to satisfy the plain error rule. *United States v. Vonn*, 535 U.S. 55, 59 (2002).

We need not determine if the district court plainly erred in treating kidnapping as a qualifying crime of violence for purposes of § 924(c) and the career-offender sentencing guideline. Even assuming an error occurred, it did not affect Mr. Nelson's substantial rights. "Satisfying the third prong of plain-error review— that the error affects substantial rights—usually means that the error must have affected the outcome of the district court proceedings." *United States v. Rios-Morales*, 878 F.3d 978, 989 (10th Cir. 2017) (internal quotation marks omitted), *cert. denied*, 138 S. Ct. 1712 (2018). That is, the appellant "must show a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *Id.* at 989-90 (internal quotation marks omitted).

The government did not charge Mr. Nelson with separate § 924(c) convictions. The superseding indictment includes a singular § 924(c) conviction, which is supported if *either* kidnapping *or* carjacking is a crime of violence. *See* R., Vol. 1 at 16. The verdict form therefore asked the jury to "specify whether the firearm was used during Kidnapping or Carjacking or both." *Id.* at 75. The jury checked, "Both." *Id.* Accordingly, if carjacking is a crime of violence, his § 924(c) conviction and sentence would still stand.

Although he challenges the evidence underlying his § 924(c) and carjacking convictions and the sufficiency thereof, Mr. Nelson does not contest that his carjacking conviction qualifies as a crime of violence to support his § 924(c)

14

conviction. *See* Aplt. Opening Br. at 37 (acknowledging that "courts within this Circuit" have determined that carjacking is a crime of violence); *see also id*. at 37 (stating that "so long as [the carjacking] conviction survives it may serve as the basis for career offender status"). Indeed, this court has held that carjacking is categorically a crime of violence under § 924(c)(3). *See United States v. Brown*, 200 F.3d 700, 706 (10th Cir. 1999) ("The substantive offense of carjacking is always a crime of violence because § 2119 requires taking or attempting to take a vehicle by force and violence or by intimidation, and the crime of carjacking carries with it a substantial risk of the use of physical force."); *see also United States v. Kundo*, 743 F. App'x 201, 203 & n.3 (10th Cir. 2018) (reaffirming the holding in *Brown* after the Supreme Court's statement in *Johnson v. United States*, 559 U.S. 133, 140 (2010), about the level of "physical force" needed for a crime of violence). As a result, even if the district court corrected the perceived error and determined that the kidnapping conviction does not qualify as a crime of violence, Mr. Nelson's conviction and sentence would remain unchanged. The error does not affect his "substantial rights."

Besides, Mr. Nelson does not argue he is presently eligible for any actual relief. To the extent his § 924(c) conviction is based on his kidnapping conviction, he complains the error "seriously affected the integrity of judicial proceedings" and "allowed the jury to convict him of Count 4 on an impermissible basis." Aplt. Opening Br. at 36. He asks us to "correct[] the error . . . in the event future developments in the laws pertaining to any surviving convictions should give rise to relief." *Id.* Similarly, for his sentence, he asks us "to correct the error in the

15

Presentence Investigation Report for any future potential purposes that may serve, and understands his request, considered in isolation, does not warrant relief from his sentencing." *Id.* at 37-38. These vague references to "future developments in the laws" and "future potential purposes" are too general and undefined to warrant relief.

### D. Applicability of Career-Offender Guideline

Mr. Nelson challenges the applicability of the career-offender guideline, USSG § 4B1.1, from another angle as well. In an attack on the procedural reasonableness of his sentence, he argues his prior state-court conviction for possession with intent to distribute cocaine in violation of Okla. Stat. tit. 63, § 2-401 (Case No. CF-2002-6849) fails to qualify as a predicate controlled substance offense under §§ 4B1.1 and 4B1.2. That guideline applies if "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." USSG § 4B1.1(a). A "controlled substance offense" is an offense that "prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." *Id.* § 4B1.2(b).

More specifically, Mr. Nelson now argues that a violation of Oklahoma's drug statute, Okla. Stat. tit. 63, § 2-401, does not qualify as a "controlled substance offense" under the guidelines definition because (1) Oklahoma's drug schedules "cover substances that are not federally controlled"; and (2) the offense "can be committed by using or soliciting the services of a minor to distribute or manufacture

16

the listed substances," so it "is categorically not a controlled substance offense." Aplt. Opening Br. at 45-46.

Because Mr. Nelson did not object at sentencing to classifying his prior state-court conviction as a "controlled substance offense," we again review for plain error. *United States v. McKibbon*, 878 F.3d 967, 971 (10th Cir. 2017) (citing Fed. R. Crim. P. 52(b)). Mr. Nelson acknowledges the plain error standard applies and even recites it. *See* Aplt. Opening Br. at 44-45. But he never applies the standard to his arguments or discusses the factors; instead, he proceeds directly to the merits. "[W]e do not develop a plain error argument for the appellant." *United States v. MacKay*, 715 F.3d 807, 832 n.17 (10th Cir. 2013). As we explained in *Richison v. Ernest Group., Inc.*, 634 F.3d 1123, 1130-31 (10th Cir. 2011), a party's failure to "attempt[] to show how his new legal theory satisfies the plain error standard . . . surely marks the end of the road for an argument . . . not first presented to the district court." Consequently, we decline to consider whether the district court plainly erred in sentencing Mr. Nelson as a career offender based on his state-court conviction in Case No. CF-2002-6849.

### E.     Sufficiency of the Evidence

Mr. Nelson contends the evidence was insufficient to support his convictions for carjacking, kidnapping, and use and discharge of a firearm during and in relation to a crime of violence. The district court found "there is sufficient evidence from which this jury could find beyond a reasonable doubt that all offenses occurred,"

17

"[v]iewing the evidence in a light most favorable to the government."  R., Vol. 3 at 275.  Accordingly, it denied his motion for a directed verdict of acquittal at trial.

We review sufficiency-of-the-evidence challenges de novo.  *United States v. Camick*, 796 F.3d 1206, 1213 (10th Cir. 2015).  Our task is to "view[] the evidence in the light most favorable to the Government to determine whether any rational trier of fact could have found the defendant guilty of the crime beyond a reasonable doubt." *Id.* at 1213-14 (internal quotation marks omitted).  "While the evidence supporting the conviction must be substantial and do more than raise a mere suspicion of guilt, it need not conclusively exclude every other reasonable hypothesis and it need not negate all possibilities except guilt."  *United States v. Erickson*, 561 F.3d 1150, 1158-59 (10th Cir. 2009) (internal quotation marks omitted).

We consider "the collective inferences to be drawn from the evidence as a whole."  *United States v. Bader*, 678 F.3d 858, 873 (10th Cir. 2012) (internal quotation marks omitted).  We do not weigh conflicting evidence or consider witness credibility, "as these tasks are exclusively for the jury."  *Id.* (internal quotation marks omitted).  We simply determine whether the evidence, "if believed, would establish each element of the crime."  *United States v. Delgado-Uribe*, 363 F.3d 1077, 1081 (10th Cir. 2004) (internal quotation marks omitted).

1.     **Carjacking, 18 U.S.C. § 2119**

To convict Mr. Nelson under the federal carjacking statute, the government had to prove the following elements beyond a reasonable doubt: "(1) that [Mr. Nelson] took a motor vehicle from the person or presence of another; (2) that he

18

did so by force, violence or intimidation; (3) that [Mr. Nelson] intended to cause death or serious bodily harm; and (4) that the motor vehicle had been transported, shipped, or received in interstate or foreign commerce." *United States v. Gurule*, 461 F.3d 1238, 1243 (10th Cir. 2006). Per the charge in the superseding indictment, the government also had to prove that Ms. Patel suffered "serious bodily injury." *See* R., Vol. 1 at 15; *see also* 18 U.S.C. § 2119(2) (stating that a defendant must be "fined . . . or imprisoned not more than 25 years, or both," "if serious bodily injury . . . results"). Mr. Nelson argues the evidence was insufficient to show the first three elements. We disagree.

With respect to the first element—a taking—Mr. Nelson states there is no "indication whatsoever that he intended to take the car from [Ms. Patel]" and references his decision to leave the scene after the shooting as proof that "he did not try to take the car." Aplt. Opening Br. at 41. But "the government need only show that the defendant engaged in the prohibited conduct, *i.e.*, acquiring possession or control of the victim's vehicle in the presence of another by force or intimidation." *Gurule*, 461 F.3d at 1243. The defendant's "subjective motivation in acquiring possession or control of the victim's vehicle is irrelevant to whether the government [has] established the 'taking' element" of § 2119. *Id*. Ms. Patel testified that Mr. Nelson "ma[de] sure" she got in the car and directed her to drive while pointing the gun at her thigh/leg, ribs, and head. R., Vol. 3 at 163, 165-66, 179.

With respect to the second element—force—Mr. Nelson argues he did not force Ms. Patel into the car because she had no other option after his sister, Velma,

19

made them both leave her home. Ms. Patel affirmatively denied that she got into the vehicle voluntarily, though. She testified that she "was scared, being forced into the car with a man who has a gun in his hand." *Id*. at 163. When asked what she meant by "forced," Ms. Patel responded, "I was told to get into the car. He was — he had pointed the gun towards my thigh, my leg." *Id*. She reiterated, "I did not want to get in the car with him." *Id.* at 174. When asked what she wanted to do, she responded, "Walk away on foot. . . . Somewhere where I felt safe." *Id.* at 174-75. Officer Clifford Damon*,* who came to the accident scene, corroborated her account, testifying that Ms. Patel told him Mr. Nelson "had a gun and told her to drive." *Id.* at 81.

With respect to the third element—intent to harm Ms. Patel—Mr. Nelson argues he was so reliant upon Ms. Patel that he would not have wanted to hurt her. But he does not address the applicable standard. "Conditional" intent satisfies § 2119's intent requirement. *Holloway v. United States*, 526 U.S. 1, 6-12 (1999). The government need not prove that the defendant "possess[ed] a specific and unconditional intent to kill or harm in order to complete" the carjacking, *id.* at 7, though that type of intent would certainly suffice. Instead, the government can prove "that *at the moment the defendant demanded or took control over the driver's automobile* the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car (or, alternatively, if unnecessary to steal the car)." *Id.* at 12 (emphasis added).[2]

---

[2] Both parties' arguments on intent extend beyond the relevant timeframe. *See* Aplt. Opening Br. at 40-41 (arguing that it would have been "illogical" for

"We determine whether a defendant possesses the conditional intent necessary to support a carjacking conviction by considering 'the totality of the circumstances.'" *United States v. Vallejos*, 421 F.3d 1119, 1123 (10th Cir. 2005). The requisite intent "can be inferred by . . . brandishing of a firearm," as well as a defendant's actions in opening a vehicle door and "shov[ing] a gun" into the victim's ribs. *Id.* at 1124; *see also United States v. Malone*, 222 F.3d 1286, 1291-92 (10th Cir. 2000) (citing cases in which waving or pointing a revolver at the victims was enough to establish conditional intent). "[W]hen a carjacker brandishes a firearm and orders a driver out of his car, it is reasonable for the driver, and for the jury, to infer that the carjacker is willing to use that firearm if the driver refuses to give up the car." *Vallejos*, 421 F.3d at 1123-24 (citing cases). Likewise, given that Mr. Nelson had a firearm in his hand when he forced Ms. Patel to get into the vehicle and pointed it at her thigh shortly thereafter, it was reasonable for the jury to infer he intended to seriously harm or kill Ms. Patel if necessary.

Viewed in the light most favorable to the government, the above-cited evidence, if believed, was sufficient to establish each element of carjacking. We affirm his conviction.

---

Mr. Nelson to intend to harm Ms. Patel while she was driving "at 60-plus miles per hour on the highway"); *id.* at 42 (reiterating the theory that the firearm discharged accidentally while Ms. Patel was driving); Resp. Br. at 40 (citing Ms. Patel's testimony that immediately before the shooting, Mr. Nelson accused her of cheating on him with his brother and repeatedly told her he only "had one shot to do this" (citing R., Vol. 3 at 167)).

21

## 2.     Kidnapping, 18 U.S.C. § 1201(a)(1)

To convict Mr. Nelson of kidnapping, the government had to prove the following elements beyond a reasonable doubt: (1) Mr. Nelson, knowingly acting contrary to law, "seized, confined, kidnapped, abducted, carried away and held" Ms. Patel against her will, per the Superseding Indictment, R., Vol. 1 at 15; (2) "for some purpose or benefit," *id.*; (3) voluntarily and with the intent to violate the law; (4) using an instrumentality of interstate commerce.  *See* Tenth Circuit Pattern Jury Instructions (Criminal) 2.55 (2018); *accord United States v. Walker*, 137 F.3d 1217, 1220 (10th Cir. 1998) (listing the elements as "(1) transportation in interstate commerce (2) of an unconsenting person who is (3) held for ransom, reward, or otherwise, (4) with such acts being done knowingly and willfully").  Regardless of how the elements are framed, "[i]nvoluntariness or coercion in connection with the victim's detention is an essential part of the offense," Tenth Circuit Pattern Jury Instructions (Criminal) 2.55.  The victim must be "held against his or her will . . . for some benefit to the captor."  *United States v. Gabaldon*, 389 F.3d 1090, 1094 (10th Cir. 2004).  Mr. Nelson argues the evidence was insufficient to prove these elements, though he does not contest the use of interstate commerce.  Again, we disagree.

Mr. Nelson relies generally on "the same evidence and inferences discussed in relation to the carjacking charge," Aplt. Opening Br. at 42.  He focuses solely on the first element, stating that he did not "unlawfully hold, keep, detain, and confine Ms. Patel against her will" because Ms. Patel (1) "didn't have any other reasonable

22

option" except to leave with him and (2) "was the only one watching the roadway." *Id.* at 42-43 (internal quotation marks omitted).

We limit our analysis to the first element because Mr. Nelson did not advance a meaningful argument on the remaining elements. "This court . . . will not craft a party's arguments for him." *Perry v. Woodward*, 199 F.3d 1126, 1141 n.13 (10th Cir. 1999). "[P]erfunctory" allegations of error that "fail[] to frame and develop an issue" are insufficient "to invoke appellate review." *Kelley v. City of Albuquerque*, 542 F.3d 802, 819 (10th Cir. 2008) (internal quotation marks omitted).

Through her preliminary hearing testimony, the government presented evidence that Ms. Patel was held against her will. She testified that Mr. Nelson would not let her leave the car when she arrived at the emergency room at his directive: "I tried to get out of the car because I had put my hand on the door handle. He pulled me back into the car before I could even get out." R., Vol. 3 at 165. She affirmatively stated that she was "trying to leave" and was "in the car against [her] will." *Id.* She continued, "He had the gun pointed to me, the side of my ribs. He told me to drive and get him out of the City." *Id. See also* R., Vol. 3 at 171 ("Q: And, Ms. Patel, in reference to the kidnapping, did you want to get out of the car? A: Yes. Q: Did you let Mr. Nelson know that you wanted to get out of the car? A: Yes."); *id.* at 179 (testifying that Mr. Nelson moved the gun from his lap and pointed it to the side of her rib, neck, and head, while repeating "that he had one shot to do this"). Even if this testimony "sounded coached" as Mr. Nelson contends, Aplt. Opening Br. at 43, it was up to the jury to assess her credibility.

23

Viewed in the light most favorable to the government, the evidence, if believed, was sufficient to establish each element of kidnapping. We affirm his conviction.

**3.      Use and Discharge of a Firearm During and in Relation to a Crime of Violence, 18 U.S.C. § 924(c)(1)(A)**

Section 924(c) "authorizes heightened criminal penalties for using or carrying a firearm 'during and in relation to,' or possessing a firearm 'in furtherance of,' any federal 'crime of violence or drug trafficking crime.'" *United States v. Davis*, 139 S. Ct. 2319, 2324 (2019) (quoting 18 U.S.C. § 924(c)(1)(A)).[3] To convict Mr. Nelson of a § 924(c) violation, the government was required to prove the following elements beyond a reasonable doubt: (1) that Mr. Nelson "use[d]," "carrie[d]" or "possesse[d] a firearm"; (2) "during and in relation to any crime of violence or drug trafficking crime." § 924(c)(1)(A).

Mr. Nelson does not contend the evidence was insufficient to establish his use and discharge of a firearm; rather, he purports to have shot Ms. Patel accidentally. He contests his § 924(c) conviction on the ground that the evidence was insufficient to prove he committed a crime of violence; namely, carjacking or kidnapping. As discussed above, the evidence was sufficient to satisfy the elements of carjacking and kidnapping. Therefore, we affirm his conviction.

---

[3] The Supreme Court held in *Davis* that the residual clause in the definition of "crime of violence" in § 924(c)(3)(B) is unconstitutionally vague. 139 S. Ct. at 2336. Mr. Nelson does not argue his conviction was based on the residual clause or challenge his conviction based on *Davis*.

24

### F. Substantive Reasonableness of Sentence

Mr. Nelson also challenges his 480-month sentence as substantively unreasonable, excessive, and greater than necessary. He acknowledges that his sentence was "at the bottom of the advisory guideline range" and that the district court could have sentenced him to life in prison for two of his convictions. Aplt. Opening Br. at 50. But he submits his sentence should have been *below* the advisory guideline range, had the district court properly applied the relevant factors.

"Substantive reasonableness involves whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Conlan*, 500 F.3d 1167, 1169 (10th Cir. 2007). We apply the deferential abuse-of-discretion standard in reviewing a sentence's substantive reasonableness. *See United States v. Ibanez*, 893 F.3d 1218, 1219 (10th Cir. 2018). "Under this standard, we can reverse only if the . . . sentence was arbitrary, capricious, whimsical, or manifestly unreasonable." *Id*. "[W]e presume that the sentence was reasonable if it fell within the applicable guideline range." *Id*. To rebut this presumption, Mr. Nelson must "show that the statutory sentencing factors render the sentence unreasonable." *Id.*

Mr. Nelson highlights the length of the district court's ruling in the transcript ("fourteen short lines") and criticizes its "exclusive focus" on "the seriousness of this offense to the victim." Aplt. Opening Br. at 50 (internal quotation marks omitted). He agrees that Ms. Patel's injury "was without question, supremely serious," but contends the district court failed to account for other important factors, such as:

(1) his history of mental illness and substance abuse; (2) his disadvantaged background (including a "family history of mental issues, learning disability and problems with reading, and environmental pressures"); (3) an emergency room doctor's testimony that Mr. Nelson "had four illicit, mind-altering substances in his system" after the incident; and (4) law enforcement's trial testimony and Ms. Patel's preliminary hearing testimony regarding Mr. Nelson's "bizarre and paranoid behavior on the night of the incident." *Id.* at 50-51.

Contrary to Mr. Nelson's contention, the district court did address many of the § 3553(a) factors at the sentencing hearing, as illustrated by the italicized language below:

> I would first announce that *restitution*, which is an appropriate part of the sentence in this case, cannot be determined at this time because the victim has not supplied any information from which it can be[] calculated. . . .

> I don't believe there is a sentence sufficient to reflect *the seriousness of this offense to the victim*. I can't imagine what her life is like and how it has changed as a result of your actions.

> I understand [defense counsel], in her memorandum, and the probation officer, in the presentence report, both outline *a history of serious mental illness, of drug abuse*, and I don't think any of us will ever know what you were thinking, if you were thinking at all that night.

> But the fact is that you did what you did and *you have ruined the life of another human being. It is not the first time that you have acted irresponsibly and dangerously.* And I believe that *a guideline sentence is entirely appropriate in this case*.

> I do not agree with the government that you should be sentenced to life in prison. . . .

26

R., Vol. 3 at 9-11 (emphasis added) (addressing the nature and circumstances of the offense, the defendant's history and characteristics, the seriousness of the offense and the need to provide just punishment, the applicable guidelines, and restitution). The district court also discussed correctional treatment for Mr. Nelson, recommending participation in the prison's inmate financial responsibility program and residential drug abuse program. Additionally, the district court adopted the detailed presentence investigation report filed on March 20, 2019, and noted in the Statement of Reasons that it imposed the sentence "[t]o protect the community, [for] deterrence, and for a just sentence." R., Vol. 2 at 84.

Mr. Nelson effectively asks us to reweigh the relevant factors on appeal. We will not do so. "The sentencing judge is in a superior position to find facts and judge their import under § 3553(a) . . . ." *Gall v. United States*, 552 U.S. 38, 51 (2007) (internal quotation marks omitted). "That we might reasonably have concluded a different sentence was appropriate is insufficient to justify reversal of the district court." *United States v. Friedman*, 554 F.3d 1301, 1307-08 (10th Cir. 2009) (brackets and internal quotation marks omitted). The facts and law often "fairly support" a range of possible outcomes. *United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007). If the sentence imposed "falls within the realm of these rationally available choices," we defer to the district court. *Id.* We conclude Mr. Nelson's sentence at the bottom of the advisory guideline range falls within that realm and is substantively reasonable. The district court did not abuse its discretion in imposing the sentence.

27

### III.    Sealing of Motion in Limine Exhibits

"[T]he public has a common-law right of access to judicial records" under a well-established presumption.  *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1135 (10th Cir. 2011).  To overcome this presumption, a party seeking to file court records under seal "must articulate a real and substantial interest that justifies depriving the public of access to the records that inform our decision-making process."  *Id.* at 1135-36 (internal quotation marks omitted).

The district court granted the government's motion to seal its August 13, 2018, motion in limine, the exhibits thereto, and Mr. Nelson's August 28, 2018, response.  In an order issued on July 16, 2019, we addressed *sua sponte* whether those materials should remain under seal.  We invited any party who seeks the continued sealing of these documents to file a response showing cause why, and for how long, they should remain under seal in the record on appeal.  We advised the parties that failure to respond shall be deemed acquiescence to unsealing.  Neither party responded.  In a follow-up order issued on July 31, 2019, we unsealed the motion in limine and the response but provisionally sealed two exhibits to the motion in limine subject to reconsideration by the merits panel:  Exhibit 1, a collection of police reports and the complete transcript from the state-court preliminary hearing; and Exhibit 2, a collection of photographs of Ms. Patel's injuries.  Neither party has articulated a reason to deprive the public of access to these judicial records.

The Clerk of the Court shall unseal Exhibit 2.  Within 14 days of this decision, the government shall file a redacted version of Exhibit 1 that deletes the contact

information for witnesses and for the victim's family members and any other personal identifying information. The currently filed Exhibit 1 shall remain sealed.

## IV. Conclusion

For the foregoing reasons, we affirm Mr. Nelson's convictions and sentence.

Entered for the Court


Carolyn B. McHugh
Circuit Judge